**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RHODE ISLAND FISHERMEN'S**
**ALLIANCE, *et al.*,**
**Plaintiffs**
**V.** **C.A. No. 07-230-ML**

**RHODE ISLAND DEPARTMENT**
**OF ENVIRONMENTAL MANAGEMENT**
**and W. MICHAEL SULLIVAN, Ph.D., DIRECTOR,**

**Defendants.**

**MEMORANDUM IN SUPPORT OF MOTION OF THE ATLANTIC STATES MARINE FISHERIES COMMISSION FOR LEAVE TO INTERVENE**

Pursuant to Fed. R. Civ. P. 24, the Atlantic States Marine Fisheries Commission (ASMFC or Commission ) respectfully seeks leave to intervene in the above-titled case.

Plaintiffs's Complaint challenges regulations adopted in 2005 by Defendant Rhode Island Department of Environmental Management (DEM) to conserve the depleted American lobster fishery by limiting fishing effort. Those regulations were adopted to implement Addendum VII to Amendment 3 to the ASMFC's fishery management plan for American Lobster, pursuant to Rhode Island's obligations as a member of the interstate fishery conservation compact that establishes the Commission. Because Plaintiffs challenge the validity of the actions of an ASMFC member State taken pursuant to its compact obligations; because their suit implicates the meaning and effect of an ASMFC fishery management plan; and because the relief Plaintiffs seek would

adversely affect the interests of ASMFC and its member states, the Commission should be granted intervention as of right under Rule 24(a).[1]

**BACKGROUND**

The ASFMC was created by interstate compact -- approved by Congress pursuant to Art. I, § 10, cl. 3, of the Constitution, Pub. L. 77-539 (1942), as amended by Pub. L. 81-721 (1950) – to "promote the better utilization of the fisheries, marine, shell and anadromous, of the Atlantic seaboard by the development of a joint program for the promotion and protection of such fisheries, and by the prevention of the physical waste of the fisheries from any cause." ASMFC Compact, Art. I.[2] The compact is binding upon each compacting State until formally renounced by it. *Id.*, Art. XII While member States retain sovereignty over fisheries within their waters, Art. IX, the Commission develops interstate fishery management plans through species-specific Management Boards (in this instance, its American Lobster Board), whose voting membership is comprised of a delegation from each State with an interest in that fishery. See ASMFC, Interstate Fisheries Management Program Charter, Sec. 4. These plans are implemented severally by each State, typically by the adoption of regulations pursuant to State law.

Rhode Island was an original member of the ASMFC compact. See R.I. Pub. L. 1941, ch. 1021, § 1; R.I. Pub. L. 1949, ch. 2360, § 1; R.I. Gen. Laws §§ 20-8-1, 20-8-2. See also R.I. Gen. Laws § 20-8-3 (designating members of Rhode Island delegation to Commission). State law directs "[a]ll officers of the state of Rhode Island * * * to do all

[1] The ASMFC has submitted a proposed Answer to Plaintiffs' Complaint.
[2] The ASMFC Compact, the ASMFC's Interstate Fishery Management Plan Charter, and the Commission's Rules and Regulations, as well as Addendum VII to Amendment 3 to the Commission's management plan for American lobster, are available on the Commission's website, http://www.asmfc.org.

things falling within their respective provinces and jurisdiction necessary or incidental to the carrying out of the compact in every particular; it being declared to be the policy of the state of Rhode Island to perform and carry out the compact and accomplish its purposes." R.I. Gen Laws § 20-8-7.

Federal statutory law gives the ASMFC an important role in conserving coastal fisheries. In 1993, Congress enacted the Atlantic Coastal Fisheries Cooperative Management Act, Pub. L. 103-206, 16 U.S.C. §§ 5101-5108 ("ACFCMA"), to support "the development, implementation, and enforcement of effective interstate conservation and management" of "[c]oastal fishery resources that migrate, or are widely distributed, across the jurisdictional boundaries of two or more of the Atlantic States and of the federal Government[.]" *Id.* § 5101(a)(3), (b). Congress was concerned that fishermen in States that had implemented ASMFC plans were "shoulder[ing] a disproportionate share of the conservation burden," and that "[i]nconsistent implementation" of those plans had contributed to the decline of fish stocks. H. Rep. 103-202 at 6 (1993).

Recognizing that "[t]he responsibility for managing Atlantic coastal fisheries rests with the States, which carry out a cooperative program of fishery oversight and management through the Atlantic States Marine Fisheries Commission," 16 U.S.C. § 5101(a)(3), ACFCMA calls upon the Commission to continue developing "coastal fishery management plans to provide for the conservation of coastal fishery resources," based upon the best available scientific information, in order to "promote the conservation of fish stocks throughout their ranges[.]" *Id.* § 5104(a)(1), (a)(2)(A). Congress left the identification of fisheries warranting protection, and the substance of management plans, to the Atlantic coastal States, acting through the Commission.

ACFCMA directs the Department of Commerce to support the Commission's interstate fishery management program. See 16 U.S.C. §§ 5103(a), 5107. The Act also authorizes the Secretary to impose a moratorium against fishing in a State's coastal sea in the event a State fails to comply with provisions of an ASMFC fishery management plan necessary to conservation of the fishery. 16 U.S.C. § 5106(c). See, *e.g.*, *Medeiros v. Sullivan*, 327 F. Supp. 2d 145 (D. R.I. 2004), *aff'd*, 431 F.3d 25 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 2968 (2006).

The American lobster, *Homarus americanus*, supports the most valuable commercial fishery in the northeast United States. ASMFC approved its initial interstate fishery management plan for lobster in 1979. During the 1990s, biologists warned that the lobster stock was overfished and vulnerable to collapse. In 1996, federal and ASMFC peer review panel concluded that intense fishing effort had resulted in depletion of the lobster population and a severe diminution in egg production and raised the risk of a stock collapse. By 1997, lobster egg production had diminished to between one and three percent of what it would be in an unfished stock.

The Commission adopted Amendment 3 to the lobster management plan in December 1997. See *Medeiros*, 327 F. Supp. 2d at 149-150. Unanimously approved by ASMFC member States with lobster fisheries, including Rhode Island, Amendment 3 implements the conclusion of the peer review panel by focusing management efforts on increasing lobster egg production. The Commission's Lobster Management Board has made subsequent refinements to Amendment 3. Addendum VII, at issue in this case, addresses continued problems with the lobster fishery in Area 2 (including coastal waters of Massachusetts, Rhode Island, Connecticut, and New York).

In October 2002, a Technical Committee report requested by the ASMFC's Lobster Management Board revealed that the lobster stock and lobster landings in Area 2 had declined; that current management measures were insufficient to remedy the stock declines, and that spawning stock biomass needed to be rebuilt. Addendum VII at 2. The Technical Committee recommended, among other things, that the Board take further steps to reduce fishing mortality in Area 2.

After a public review and comment process, the Board adopted Addendum VII, which is designed to "establish a multi-state effort control program for Lobster Conservation Management Area 2 that governs traps fished in state and federal waters to cap effort (traps fished) at recent levels and allows adjustments in traps based on future stock conditions," and to "prevent a return of overall fishing levels to historic highs of the late 1990's." Addendum VII at 3. The plan "limits participate to permit holders who have been active in the fishery in recent years, creates permit-holder specific trap limits that are unique and based on reported traps fished and landings, and establishes a transfer program tat allows the transfer of trap allocations with a conservation 'tax.'" Addendum VII explains that "[l]imiting access and allocating a set number of traps will also allow managers to more precisely quantify the universe of known effort in Area 2 and thus facilitate the overall management of the resource." Id. at 3. Defendant Rhode Island DEM promulgated the regulations at issue in this case to implement Addendum VII.

**ARGUMENT**

Rule 24(a) provides for intervention as of right "when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair

or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." See *Conservation Law Foundation of New England, Inc. v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992).

That standard is satisfied here.[3] The ASMFC's interests are directly affected by Plaintiffs' claims in this suit. A ruling setting aside Rhode Island's regulatory implementation of Addendum VII could adversely affect the conservation objectives it was designed to secure, undoing controls on fishing effort that the Commission found were necessary to give the lobster fishery in Area 2 an opportunity to recover. That result would pose risks for a troubled fishery the Commission is charged to protect, and could well require the ASMFC to take further action to protection the fishery.

More broadly, the relief Plaintiffs seek could imperil the integrity of the fishery management planning process by which ASMFC member states agree to abide by restrictions on fisheries within their waters based upon the assurance that their fellow member States with whom they share a fishery will abide by similar restrictions, all for the common benefit in conserving interstate fisheries. Congress, in the ACFCMA, recognized precisely this hazard. See 16 U.S.C. § 5101(a)(5) ("The failure of one or more Atlantic States to fully implement a coastal fishery management plan can affect the status of Atlantic coastal fisheries, and can discourage other states from fully implementing coastal fishery management plans."). The Commission thus seeks leave to appear here in part to protect the interests of its other member States.

The Commission has a strong institutional interest in ensuring that member States are able to and do, in fact, implement the provisions of fishery management plans. See

[3] Although we believe the ASMFC is entitled to intervene as of right, even if that were not the case, it should be entitled permissive intervention under Rule 24(b).

*Commack Self-Service Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 101 (E.D.N.Y. 1996) (allowing intervention based on lawmakers' "'institutional interests'" in upholding laws they made) (citation omitted), *aff'd*, 294 F.3d 415 (2d Cir. 2002), *cert. denied*, 537 U.S. 1187 (2003). These plans are carefully designed to address the challenges of managing interstate fisheries, many of which – like American lobster – are under extreme pressure. Measures such as Addendum VII reflect an often laborious process of negotiation between the representatives of member states concerning how to allocate the burdens of resource conservation measures and how to achieve conservation goals most effectively.

The direct stakes of litigation for the ASMFC are evident in Plaintiffs' filings in this litigation. They acknowledge that Addendum VII was the basis for the Rhode Island regulations they attack, Complaint ¶ 17. Identifying the legal consequences of Addendum VII is likely to be an important for resolution of this case.[4] Moreover, Plaintiffs' multi-pronged state-law attack on the DEM's implementing regulations appears based on their view that the State had no obligation to implement the ASMFC's plan; in other words – as stated in Plaintiff's Memorandum of Law in support of their motion to remand the case to state court – that the ASMFC's plan could be treated as mere "recommend[ations]." Memo. at 9. As the ASMFC's Interstate Fishery Management Program Charter makes clear, however, "[a]ll states are responsible for the full and effective implementation and enforcement of fishery management plans within areas subject to their jurisdiction." Charter, Section 7(a). See also 16 U.S.C. § 5106(c).

The Commission has an interest in appearing here to ensure that the obligations imposed by an ASMFC are given due effect. A ruling for Plaintiffs in this case could "as

[4] Should the Court find it beneficial, the ASMFC will prepare and file the administrative record documenting the process by which Addendum VII was developed.

a practical matter impair or impede," Rule 24(a), the Commission's ability to ensure that member States give effect to fishery management plans which are the basic tool by which the Commission pursues its mission of conserving interstate fisheries. Indeed, the premise on which the ASMFC Compact was entered into, and approved by Congress, was in inability of the Atlantic coastal States acting individually effectively to manage fisheries that cross state boundaries. See ASMFC Compact, Art. I. The ASMFC's institutional structure and internal procedures are designed to address the reality that individual member States' interests and perspectives with respect to interstate fisheries will sometimes differ from that of other states with a stake in that fishery, and that a collective decision-making apparatus is warranted to ensure that fisheries are managed in a way that fosters the long-term benefit of the fishery.

The relief that Plaintiffs seek in this case also illustrates the Commission's acute interest in this litigation. See, *e.g.*, *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) (intervention allowed were relief sought could adversely affect movant) (citing *Sierra Club v. United States EPA,* 995 F.2d 1478, 1484 (9th Cir. 1993). Among other relief, they seek injunctive relief barring enforcement of the DEM regulations implementing Addendum VII. See Complaint, pp. 15-16. A judicial decree preventing a single State from taking steps necessary to implement an interstate fishery management plan would very likely have consequences for the interstate fishery as a whole, for other ASMFC States, and for the integrity of the Commission's fishery management process. ASMFC's status as guardian of interstate fisheries would bear importantly upon the appropriate scope of any remedy entered in this case, to insure that it did not injure interests not before the Court, including those of fishermen and States

outside Rhode Island who depend on the recovery of the lobster fishery. The Commission is better situated than a member State to elaborate on the impact of the requested relief on interests outside Rhode Island, and on the Commission's broader interest in full and timely implementation of fishery management plans.

Nor is this a case in which another party already before the Court will adequately represent the proposed intervenor. See *Conservation Law Foundation*, 966 F.2d at 44 ("An intervenor need only show that representation may be inadequate, not that it is inadequate.") (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). While the state Defendants are a public entity and a public official, cf. *Ruthardt v. U.S.*, 303 F.3d 375, 386 (1st Cir. 2002), their interests and incentives are (properly) directed to impacts on Rhode Island resources and the State's economy, and differ in important ways from the Commission's. Compact arrangements are predicated on the recognition that individual States sometimes have limited or no incentives to protect their neighbors' interests in resources that cross State lines. Such differences between the missions and incentives of compacting States and those of interstate compacts entities, that have let courts to emphasize the "federal" character of compact arrangements. See, *e.g.*, *West Virginia ex rel. Dyer v. Sims*, 341 U.S. 22, 27-28 (1951); *Washington Metro. Area Transit Auth v. One Parcel of Land*, 706 F.2d 1312, 1219 (4th Cir. 1983).

Although we have no doubt that the state Defendants will aggressively and effectively defend the DEM regulations, the interests of the two Rhode Island defendants differ from the Commission's. As the entity that promulgated the lobster FMP, including Addendum VII, the ASMFC is uniquely situated to interpret plan documents and to explain the significance of their terms for State implementation obligations and

fishery conservation goals. A member State has much less incentive than does the Commission itself to resist claims that States may disregard the terms of Commission FMPs; and indeed, there have been times in which States and the Commission have endured conflicts concerning the effect of Commission FMP. See *Medeiros*, 431 F.3d at 28 (discussing conflict arising from some Rhode Island officials' disagreement with provisions of Amendment 3). The Commission has a unique interest in ensuring that FMPs are implemented effectively and without delay, so as not to unravel the interstate accommodations on which they are based.

Finally, granting intervention will neither impose any unfair burden on Plaintiffs or on the Court and will not unduly delay or complicate the litigation. The Commission will coordinate with the state Defendants in order to avoid duplicative filings or arguments, and will work to streamline the proceedings.

**CONCLUSION**

The Commission's motion for leave to intervene should be granted.

Respectfully submitted,

/s/ Gregory L. Benik

Gregory L. Benik (#1515)
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
Fax: (401) 454-1030
Tel: (401) 454-1000
gbenik@nixonpeabody.com

*Of Counsel:*

Sean H. Donahue
Donahue & Goldberg, LLP
2000 L St., NW Suite 808
Washington, DC 20036
(202) 466-2234
donahue@article3.net

CERTIFICATE OF SERVICE

I hereby certify that on the 20th of July, 2007, an exact copy of the within Memorandum in Support of Motion of the Atlantic States Marine Fisheries Commission for Leave to Intervene was electronically mailed to the Electronic Case Filing system of the United States District Court for the District of Rhode Island. Notice of this filing, as indicated in the Notice of Electronic filing, will be sent via e-mail to the following:

Robert Caron, Esq.
rcaron@caronolenlaw.necoxmail.com

Terence J. Tierney, Esq.
ttierney@riag.ri.gov

/s/ Gregory L. Benik