**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**RHODE ISLAND FISHERMEN'S ALLIANCE, *et al.*,**
***Plaintiffs*,**

**V.** **C.A. No. 07-230**

**RHODE ISLAND DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and W. MICHAEL SULLIVAN, Ph.D., DIRECTOR,**

***Defendants*,**

**ATLANTIC STATES FISHERIES COMMISSION,**

**RHODE ISLAND LOBSTERMEN'S ASSOC., *et al.***

***Movant-Intervenors.***

---

**SUPPLEMENTAL MEMORANDUM OF THE ATLANTIC STATES MARINE FISHERIES COMMISSION ON ADDENDUM VII ADOPTION AND COMPLIANCE**

---

Gregory L. Benik
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1030

Sean H. Donahue
Donahue & Goldberg, LLP
2000 L St., NW Suite 808
Washington, DC 20036
(202) 466-2234

**SUPPLEMENTAL MEMORANDUM OF THE ATLANTIC STATES MARINE FISHERIES COMMISSION ON ADDENDUM VII ADOPTION AND COMPLIANCE**

Proposed Intervenor the Atlantic States Marine Fisheries Commission (ASMFC or Commission) respectfully submits this Memorandum in response to the Court's order of August 21, 2007, to address issues raised at the hearing held on that date. This Memorandum (1) describes the lengthy and public process by which the Commission adopted Addendum VII to Amendment 3 to the Fishery Management Plan for American Lobster; (2) identifies the sources of Member States' obligations to implement the requirements of Addendum VII, including the pivotal requirement that States use reported 2001-2003 fishing effort as the basis for trap allocations; (3) describes States' progress in implementing Addendum VII; and (4) discusses the importance of uniformity in trap allocation rules for the Southern New England lobster stock. Attached to this Memorandum are the documents the Court requested and certain others referenced herein, including a map showing Lobster Conservation Management Area 2 ("Area 2") and surrounding management areas that are home to the Southern New England lobster stock, see Appendix Document A ("Doc. A").

**A. The Development and Adoption of Addendum VII**

Addendum VII (Doc. B) is part of a series of efforts by the Commission to restore the depleted Southern New England lobster stock by imposing limits on fishing activities. See, *e.g.*, Doc. B at 2 (noting Board's previous conservation efforts in Area 2, including increase in minimum gauge size in Area 2 and establishment of effort control program); *Medeiros v. Sullivan*, 327 F. Supp. 2d 145, 150-52 (D. R.I. 2004) (upholding limits on lobster fishing by non-trap gear, and noting corresponding limits on trap fishing), *aff'd*, 431 F.3d 25 (1st Cir. 2005), *cert. denied*, 126 S. Ct. 2968 (2006). The Commission acted in response to evidence that the

Southern New England fishery – including the portion within Area 2 – is depleted, and that a principal cause of the stock's depleted status was a steep rise in fishing effort in the late 1990s.

A 2002 report by the ASMFC's American Lobster Technical Committee revealed declining landings and survey indices, indicating the need for new management measures. In February 2004, the Board approved Addendum VI, which required "'all jurisdictions with Area 2 permit holders'" to "'develop a new effort control plan, which caps effort at or near current levels with the potential to adjust the levels based upon the outcome of the upcoming stock assessment.'" See Mem. from Pat White, ASMFC Lobster Board Chair (July 25, 2005) (Doc. C) at 5. Beginning in December 2004, the Lobster Conservation Management Team (LCMT) for Area 2 held meetings – attended by State and federal fisheries managers and industry representatives -- concerning a new effort control plan. Doc. C at 5-6.[1] In early 2005, the LCMT held a series of public meetings with lobstermen's groups held in Providence, Rhode Island, and in Fall River, Massachusetts. See *id.* at 6.

The LCMT developed a set of goals, including reducing traps to achieve desired fishing mortality levels; minimizing disruption to current participants in the commercial fishery; and developing clear, administrable rules for the participating jurisdictions (both Area 2 States and the federal government). Doc. C at 6. One key consideration was the problem of "latent effort" – *permitted* levels of effort in excess of *actual* effort – that, unaddressed, could frustrate any effort controls. See, *e.g.*, Doc. C at 2, 4 (table 1) (demonstrating that the great majority of permit holders in Massachusetts and Rhode Island fished far fewer traps during 1999-2004 than the 800

---

[1] Amendment 3 to the Lobster Plan creates LCMTs for each of the seven lobster management areas. LCMTs are appointed by the Board to advise it and recommend changes to the program for each specific area to fulfill the goals of the Plan while taking into account local fishing practices. LCMTs are composed of industry representatives appointed by the States, State fishery managers and representatives from the ASMFC American Lobster Technical Committee.

allowed by their permits). The LCMT recommended controlling effort by basing allocations on traps actually deployed during a reference period – thus preventing a resource-depleting expansion of the fishery, while also ensuring allocations to fisherman who had remained active. "Most industry representatives involved in the discussions accepted the premise of allocating traps based on past performance (landings) and a program goal to cap effort at recent levels * * *" *Id.* at 7. "Much of the debate centered on which years the plan should use to determine performance level (e.g. 1999-2003 v. 2001-2003)." *Id.*

In April 2005, the LCMT submitted a set of proposed elements "as the industry preferred options," including: the use of a 2001-2003 qualifying period for trap allocations, with allocations based solely upon the maximum value of landings during that period. Doc. C at 8-9. "A key issue that the Board must resolve" was the "choice of performance years: "should it be a five year period, 1999-2003, * * * or a shorter period?" *Id.* at 10. The choice of a short, recent period would "capture recent attrition" in the lobster fishery – with effort in 2003 being far below that for 1999 -- and thereby achieve the conservation objective of reducing lobster effort and catch. *Id.* Basing the reference history one recent year, while desirable for conservation, could have "disparate impacts on some fishermen with poor performance in the most recent year"; at the other extreme, using "extended periods (up to five years) would accommodate nearly all fishermen who fished at any time during the period," fail to "capture the fishery's recent attrition," and could return effort to "historic levels" contrary to conservation goals. *Id.*

Based on input from the LCMT, the Board in August 2005 published a draft Addendum containing proposals for a new effort control plan. Draft Addendum VII (Doc. D) set forth, for public comment and Board consideration, alternative methods for States to allocate traps to their

commercial lobster fishermen. See Doc. D at 6-7.[2] The options were: (A) "highest value of Effective Traps Fished during 2001-2003,"[3] (B) "highest value of Effective Traps Fished, during 1999-2003," (C) "highest value of predicted traps fished over three years, 2001-2003, based solely on the relationship between pounds reported and maximum traps fished," and (D) "highest value of predicted traps fished over five years, 1999-2003, based solely on the relationship between pounds reported and maximum traps fished." *Id.* (emphases original).

The Board used fishing effort in 2003 – a year reflecting recent attrition in the lobster fishery -- as the target level of effort consistent with the Plan's conservation objectives. Option A – with its shorter, three-year performance period and conservative "Effective Traps Fished" test – was predicted to result in effort exceeding the target level by 23%. Doc. D at 6. By contrast, Option B was expected to result in allocations exceeding target levels by 61%; Option C by 47%; and Option D by about 87%. *Id.* 6-7.[4] Consistent with the ASMFC's public participation requirements, the Board convened public hearings in Rhode Island, Massachusetts, Connecticut, and New York. See Board Proceedings (October 31, 2005) (Doc. E). at 46. The Board also solicited and received written comments from the public, most of them favoring the use of 2001-2003 as the qualifying years for trap allocation. *Id.* at 35.

---

[2] The Draft also set forth other elements, including a ban on issuance of new permits for commercial lobster fishing in Area 2; requirements that a single fishing history could not be used to create an allocation of traps for more than one federal vessel permit or state license; and an Area 2-wide Trap Allocation Cap to establish a maximum number of traps allocated among all permit holders from states with permit-holders with landings in Area 2. Doc. D at 5.

[3] "Effective traps fished" refers to the lower of (1) the maximum number of traps reported fished for a year, and (2) the number of traps predicted, using a prescribed regression analysis, to catch the poundage of lobster reported by the lobsterman. Doc. D at 6, 12 (Figure 3), 15 (Table 2).

[4] The Draft also presented a variety of options concerning transferability of trap allocations, and concerning whether to allow permit-holders who had been unable to fish during the proposed performance periods (2001-2003 or 1999-2003) due to medical hardship or military service an opportunity to qualify for trap allocations. Doc. D at 9-10.

At its meeting on October 31, 2005, the Board considered Draft Addendum VII and the public comments. After deliberation and additional public input, the Board voted to approve Option A, including the 2001-2003 reference period for trap allocations. See Doc. E at 48, 57. Thus, as approved, Addendum VII requires that States with resident fishermen permitted to fish in Area 2 allocate traps based upon the highest value of Effective Traps Fished during 2001-2003. Doc. B at 6.[5] Any further reductions in traps necessary to achieve the Area 2-wide Trap Allocation Cap, or to achieve necessary based upon later stock assessments, would be accomplished through percentage reduction in allocations. *Id.* at 6-7.

The trap allocation methodology based upon fishing history, and the 2001-2003 baseline, are pivotal elements of the effort control program established by Addendum VII, and were actively debated before the LCMT and the Board. Indeed, the limitation of allocations based upon documented 2001-2003 effort is the basic mechanism by which the Addendum controls effort to protect the lobster resource. The 2001-2003 period was selected because it best served the Plan's conservation goals, while preserving allocations for fishermen active in recent years.

**B. Sources of States' Legal Obligation to Comply with Addendum VII.**

ASMFC fishery management plans, including modifications such as Addendum VII, are obligatory on member States. Under the Commission's ISFMP Charter (Doc. F), "all states are responsible for the full and effective implementation and enforcement of fishery management plans within areas subject to their jurisdiction." § 7(a).[6] States must submit a "written report

---

[5] Although the trap allocation methodology is listed under a portion of the Addendum captioned "Optional Elements," Doc. B at 5, this does not mean that the use of the prescribed allocation methodology is at the discretion of States or fishermen. Rather, "optional" referred to the fact that the choice of allocation methodologies (among other elements of the Addendum) involved *the Board's* choice among several options that had been developed by staff. See Doc. D at 6-7.

[6] The ASMFC's Rules and Regulations provide that Fishery Management Plans issued by the Commission "shall be considered 'recommendation[s] . . . in regard to any species of fish,'

on compliance with required measures," of a plan, including "copies of relevant laws and regulations for the Commission's record." *Id.*[7] "At any time, * * * the Commission may determine that a State is not fully and effectively implementing and enforcing the required provisions of a fishery management plan, and is therefore not in compliance with that plan." *Id.* If the Commission determines that the State is in noncompliance, its determination is forwarded to the State and federal fisheries agencies. See *id.*, § 7(c).

These Charter provisions are consistent with the federal Atlantic Coastal Fisheries Cooperative Management Act (ACFCMA), 16 U.S.C. §§ 5101, *et seq.*, which expresses Congress's view that compliance with ASMFC plans is important to serve the national interest in conserving interstate fisheries, and to prevent the disharmony and waste of resources that can occur with piecemeal State regulation of interstate (and State/federal) resources. See *id.* § 5101(a), (b). ACFCMA expressly confirms the responsibility of ASMFC member States to comply with the provisions of the Commission's fishery management plans, and requires that the

---

according to the requirements of Article IV of the Compact establishing the Commission." Rules and Regulations, Art. IV, § 4 (Doc. G at 12). Although Plaintiffs suggest that ASMFC plan provisions are merely "recommendatory," so that member States may disregard or substitute for them, see Mem. in Support of Objection to ASMFC Mtn. for Leave to Intervene 4-6, that argument is inconsistent with § 7 of the Charter, and with the understanding of ASFMC Plans underlying ACFCMA. Plaintiffs' contentions – which go directly to the relationship between member States and the Commission – only confirm the strong interstate and federal interests implicated by this lawsuit. See ASMFC Mem. in Support of Mtn. for Leave to Intervene at 6-9.

[7] As Plaintiffs has noted, States subject to ASMFC plans may submit for Commission review alternative management measures calculated to achieve equivalent conservation benefits. Amendment 3 to the Lobster Plan (Doc. H), for example, provides that States may submit alternative management measures for the Board's consideration. § 3.5. Commission approval, moreover, must *precede* the implementation of any alternative management measures, and the State must satisfy the Board "that the target egg production will be achieved" and that the alternative measures are "consistent with the target fishing mortality rate then applicable, and the goals and objectives of [Amendment 3]." Doc. H, § 3.5.1. No Area 2 State sought any equivalency determination, and in light of the pronounced need for uniform trap allocation methods, discussed below, it is unlikely that such a proposal could have gained approval.

Commission monitor compliance with those plans, see 16 U.S.C. § 5104(b), (c); *Medeiros*, 327 F. Supp. 2d at 147. If the Commission finds that a State has not timely implemented and enforced the provisions of a Plan, it must notify the Secretaries of Commerce and Interior. 16 U.S.C. § 5105(b). The appropriate Secretary then reviews the finding; if he or she finds that the "State in question has failed to carry out its responsibility" under § 5104 and that the plan provisions are "necessary for the conservation of the fishery," "the Secretary shall declare a moratorium on fishing in the fishery in question" within the State. *Id.* § 5106(a), (c).

Member States regard themselves as bound to comply with the provisions of ASMFC fishery management plans. Through their representatives on the Commission, the States approved the Charter affirming their obligation to comply with those plans, and it is the well understood premise of the procedures by which Plans and amendments are adopted -- processes in which the States are represented -- that these measures, once adopted, will be obligatory.[8]

**C. States' Implementation of Addendum VII.**

Under the Lobster Plan, trap allocations are determined by the agency that issues the permit allowing the taking of lobster. Area 2 consists of Massachusetts and Rhode Island State waters and federal waters. Massachusetts and Rhode Island are home to almost all Area 2 State-licensed lobstermen; fishermen from other States need State or federal permits to fish in Area 2. Connecticut, Rhode Island, and Massachusetts have adopted regulations to implement Addendum VII and have allocated traps to Area 2 fishermen. All three States have used the Addendum VII allocation formula, relying on the 2001-2003 reference period.[9]

---

[8] In the case of Rhode Island, State law obligates State officials to carry out the terms of the ASMFC compact "in every particular." R.I. Gen Laws § 20-8-7.

[9] The vast majority of commercial lobstermen active in Area 2 are from Massachusetts and Rhode Island. For example, whereas both of these states allocate traps to hundreds of commercial lobstermen, Connecticut allocated traps to a total of four such fishermen and, the

Rhode Island promulgated its regulations (Doc. I) to bring the State "into compliance with Addendum VII * * *, as adopted by the [ASMFC] in November 2005. The purpose of the program is to help achieve a healthy and sustainable lobster resource in Area 2 by capping effort at 2001-2003 levels, and establishing a mechanism for future adjustments in response to changes in resource status." RI Marine Fisheries Reg. 15.14.2-1 (2007). To be eligible for a Lobster Trap Allocation, an applicant must have (a) (i) held a DEM-issued commercial lobster license, or a federal lobster permit endorsed for Area 2, at some point during 2001-2003; (ii) documented actual lobster landings during 2001-2003 (unless unable due to material incapacitation as defined in the regulations); and (iii) renewed his permit annually since 2003; or (b) lawfully acquired a federal lobster permit that meets the subsection (a) requirements or acquired the vessel and gear of a Rhode Island license holder who meets the specified qualifications. Reg. 15.14.2-6. Fishing performance is based on logbook reports or federal Vessel Trip Reports; the DEM will consider other information if previously provided to a government agency. Reg. 15.14.2-6(c).

**D. The Need for Interstate and Federal-State Uniformity in Effort Controls.**

Administrative consistency is a crucial element of this multi-jurisdictional program. The need for consistency is straightforward: lobster are mobile and can migrate within a stock area without regard for political boundaries. Accordingly, inconsistent regulations could have the detrimental effect of allowing a lobster conserved in one State to be then taken as it travels to the next State if that next State has less restrictive or different regulations. See also, *e.g.*, 16 U.S.C.

---

appeal period having closed, no additional allocations will be made. New York has requested that Area 2 vessels indicate interest in receiving traps, three fishermen have requested an Area 2 allocation. By verbal communications with ASFMC staff, New York has indicated it will allocate traps in accordance to the rules set by Addendum VII. All other regulations required under Addendum VII have been adopted by New York. New Jersey officials have informed ASMFC staff that seven New Jersey residents have federal permits authorizing them to fish for lobster in the federal portions of Area 2; the federal government will be responsible for trap allocations for these federal permittees.

§ 5101(a)(3) (describing to "disparate, inconsistent, and intermittent State and Federal regulation" as having been "detrimental to the conservation and sustainable use" of Atlantic coastal fishery resources). Addendum VII sought to prevent this problem by identifying qualification and allocation criteria applicable to all States, and establishing a coordinating committee to review certain decisions of the member States to ensure overall consistency, Doc. B at 4. The Commission did not want fishermen with the same history to get different allocations merely because of differing State citizenship.

The federal government's role in managing Area 2 fisheries further highlights the importance of uniform rules for trap allocations. Most of Area 2 waters are in subject to federal jurisdiction (all waters more than three miles offshore), and the Southern New England Lobster stock of which the Area 2 fishery represents just one part straddles other federal and State management areas. See Doc. A. Lobster in that unitary stock do not respect the division between State and federal waters any more than they do the boundaries between States. Many lobstermen active in Area 2 are "dual permit holders" who hold authorizations to catch lobster in both State and federal waters. Although these individuals hold dual permits, Addendum VII makes clear (Doc. B at 3-4) that the Commission considers their fishing history to be single and indivisible. One key goal of establishing a single fishing history is to ensure consistency for the dual permit holder: Although separate jurisdictions render independent allocation decisions, those separate decisions should be based upon on a single set of facts and mirror one another. But that goal requires that the jurisdictions use the same set of criteria, namely, those specified in Addendum VII. If a State were to stray from the ASMFC rules, moreover, the Federal Government would placed in an intractable dilemma: Addendum VII recommends that the

Federal Government implement regulations consistent with State regulations, yet those State regulations would be at odds with one another.[10]

The federal government has been an active and important participant in the ASMFC administrative processes concerning Addendum VII's development and implementation. Indeed, the stated goal of Addendum VII is to " * * * establish a multi-state effort control program for Lobster Conservation Management Area 2 that governs traps fished in state and federal waters." (Doc. B at 3). NOAA is currently in the process of considering regulations governing federal permitting within Area 2; it is the Commission's expectation that the federal regulations will contain effort controls congruent with Addendum VII, including in their use of a 2001-2003 fishing history baseline for trap allocations.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand and grant the ASMFC's Motion for Leave to Intervene.

Respectfully submitted,

Gregory L. Benik
Nixon Peabody LLP
One Citizens Plaza
Providence, RI 02903
(401) 454-1030

Sean H. Donahue
Donahue & Goldberg, LLP
2000 L St., NW Suite 808
Washington, DC 20036
(202) 466-2234

[10] The Federal Government has recently reiterated to the ASMFC the serious problems inconsistent State rules would present – a problem presented *in extremis* by the relief Plaintiffs seek. In an April 23, 2007, letter to the Commission, NOAA-Fisheries Regional Administrator Patricia A. Kurkul noted that "State/Federal consistency is particularly fundamental in a limited access program based on fishing history, such as has been proposed in Area 2, where that single fishing history was often established under a dual state and federal permit." Doc. J. at 1-2. The letter cited the need to "prevent potential jurisdictional chaos in lobster management." *Id.* at 2.

# APPENDIX

**Document**:

(A) Map showing range of three American Lobster stocks and the federal/state Lobster Conservation Management Areas;

(B) Addendum VII to Amendment 3 to the Interstate Fishery Management Plan for American Lobster (ASMFC Nov. 2005);

(C) Memorandum from Pat White, Chairman of the ASMFC Lobster Board (July 25, 2005);

(D) Draft Addendum VII to Amendment 3 to the Interstate Fishery Management Plan for American Lobster (ASMFC August 2005)

(E) ASMFC, Proceedings of the Lobster Management Board (October 31, 2005) (pp. 46-57)

(F) ASMFC's Interstate Fisheries Management Program Charter (§§ 6, 7) (rev. 2002)

(G) ASMFC, Compact & Rules and Regulations (rev. 2003)

(H) ASMFC, Amendment 3 to Interstate Fishery Management Plan for American Lobster (1997) (Section 3.5)

(I) Rhode Island Marine Fisheries Reg. 15.14.2 (2007)

(J) Letter from NOAA-Fisheries Regional Administrator Patricia A. Kurkul to John V. O'Shea, ASMFC Executive Director (April 23, 2007)

## CERTIFICATE OF SERVICE AND STATEMENT REGARDING FILING

Undersigned counsel hereby certifies that on this 31st day of August, 2007, he served copies of the foregoing Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance, together with the documentary Appendix thereto, upon the following counsel, by prepaid Federal Express, Standard Overnight, or first-class United States Mail, postage prepaid, as indicated below:

Robert Caron, Esq. (by Federal Express)
55 Bradford St., Suite 203
Providence, RI 02903

Terence J. Tierney, Esq. (by U.S. Mail)
Special Assistant Attorney General
150 South Main St.
Providence, RI 02903

Gary Powers, Esq. (by U.S. Mail)
Deputy Chief Legal Counsel
RI Dept. of Environmental Management
235 Promenade St.
Providence, RI 02908

Mark A. McSally, Esq. (by U.S. Mail)
Kelly, Kelleher, Reilly & Simpson
28 Caswell St.
Narragansett, RI 02882

Undersigned counsel further certifies that on this date he dispatched by prepaid Federal Express, Standard Overnight, two complete copies of the above-mentioned Memorandum and Appendix addressed to the Clerk, United States District Court for the District of Rhode Island, and dispatched by the same means two courtesy copies of the Memorandum and Appendix the Chambers of Chief Judge Mary M. Lisi, United States District Court for the District of Rhode Island. Undersigned counsel will file an electronic copy of the Memorandum, but not the Appendix, with the Electronic Case Filing System of the United States District Court for the District of Rhode Island on or before September 4, 2007.

Sean H. Donahue