UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **RHODE ISLAND FISHERMEN'S ALLIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually,** ***Plaintiffs*** | : | |
| **v.** | : | **C.A. NO. 1:07-cv-230** |
| **THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT And W. MICHAEL SULLIVAN, PH.D. In his capacity as the Director of the Rhode Island Department of Environmental Management** ***Defendants*** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN RESPONSE TO PROPOSED INTERVENER'S SUPPLEMENTAL MEMORANDUM TO THE COURT**

Respectfully submitted,
Plaintiffs,
By their attorney,

/S/ Robert J. Caron
Robert J. Caron, Esq. 5735
55 Bradford Street, Ste 203
Providence, RI 02903
Phone: (401) 621-8600
Fax (401) 274-2480
rcaron@caronolenlaw.necoxmail.com

**INTRODUCTION**

The gravamen of this Court's inquiry regarding the jurisdictional issues raised in this case centered around whether those regulations adopted by the Rhode Island Department of Environmental Management (DEM) and challenged by the Plaintiffs, were mandatory under Amendment 3 and/or Addendum VII. Specifically, the Court inquired as to whether the three year control period adopted by DEM for trap tag allocations was mandated by operation of Rhode Island's membership in the Atlantic States Marine Fisheries Compact (Compact).

In brief, the answer is no. None of the Atlantic States Marine Fisheries Commission's (ASMFC or Commission) governing documents, including the Compact & Rules and Regulations, (Exhibit 1), the Interstate Fisheries Management Charter (Charter), (Exhibit 2), nor any particular Commission rulemaking, including Amendment 3 to the Interstate Fishery Management Plan for American Lobster (Plan), (Exhibit 3) and Addendum VII to the Plan (Exhibit 4), nor any other source of federal law, including the Atlantic Coastal Fishery Cooperative Management Act, 16 U.S.C. § 5101-5108, dictate an affirmative answer.

Indeed, to the extent that any of these authorities have anything to do with this case – which is strictly a matter of Rhode Island constitutional interpretation of a state statute – is that they may be asserted by the State as a defense for its actions or they may entail certain consequences depending on what the State, the Commission, and the Secretary of Commerce may or may not do in response to an affirmative judgment. The former is inadequate to convey "arising under" jurisdiction on this Court. See Oklahoma Tax Com'n v. Graham, 489 U.S. 838 (1989) ("[W]hether a case is one arising under

[federal law], in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.") (quoting Taylor v. Anderson, 234 U.S. 74, 75 -76 (1914)). The latter is simply irrelevant to the issues in this case.

Plaintiffs discuss the reasons behind these conclusions in great depth below.

## I. AMENDMENT 3 TO THE INTERSTATE FISHERY MANAGEMENT PLAN FOR AMERICAN LOBSTER AND ADDENDUM VII DO NOT REQUIRE THE STATE OF RHODE ISLAND TO ADOPT THE SPECIFIC REGULATIONS WHICH DEM CHOSE TO ADOPT WITH RESPECT TO LOBSTER TRAP TAG ALLOCATIONS

Amendment 3 to the Interstate Fishery Management Plan for American Lobster supersedes all prior versions of the Lobster Plan and amendments, and thus is the current operative Plan. See Exhibit 3, p. ii, App. 42[1]. ("Amendment #3 completely replaces all previous fishery management plans and amendments for the Atlantic States Marine Fisheries Commission."). The Plan's Executive Summary states in no uncertain terms under the heading "Measures Applicable to All States and Areas Along the Atlantic Coast", that "***Nothing in this section precludes any state or area from promulgating different regulations as long as it can be shown to the Board's satisfaction that alternate regulations provide for equivalent conservation of the lobster resource (see Section 3.6).***" Exhibit 3, p. iii, App. 43 (emphasis added). Moreover, the Plan "allows **states** and the Lobster Management Board the flexibility to change certain measures of the plan to account for changing fishery conditions, and to allow for innovation and new management measures." Id., p. iv, App. 44 (emphasis added).

[1] All citations in this Memorandum are cited to the page of the exhibit itself and to the corresponding Appendix page for the Court's convenience

As a part of the "flexibility" granted to states, the Plan provides for "conservation equivalency." Id. Exhibit 3, p. 24-25, App.71-72. Under the heading "Alternative State Management Regimes", the "Plan" provides as follows:

> 3.5.1 Procedures
>
> A state may submit a proposal for a change to its regulatory program or any mandatory compliance measure under this amendment to the commission, including a proposal for *De Minimus*[2] status. Such changes shall be submitted to the Chair of the Plan review team…The Board will decide whether to approve the state proposal for an alternative management program if it determines that it is consistent with the target fishing mortality rate then applicable, and the goals and objections of this amendment.
>
> 3.5.2 Management Program Equivalency
>
> The Lobster Technical Committee will review any alternative state proposals under this section and provide to the Board its evaluation of the adequacy of such proposals.

Id. pp. 24-25, App. 71-72.

The existence of this provision, providing as it does the right of states to submit alternative management schemes, cuts all legs out from under the argument that Rhode island had no choice but to adopt Addendum VII, discussed *infra*, strictly as passed.

## II. CONSERVATION EQUIVALENCY WAS AN OPTION FOR RHODE ISLAND AND OTHER STATES HAVE UTILIZED THE OPTION

For example, on or about August 14, 2007, the Atlantic States Marine Fisheries Commission's American Lobster Management Board (Board), approved a conservation equivalency measure for Connecticut and New York for Lobster Management Area 6.

[2] *De Minimus* status is defined as a "situation in which, under existing conditions of the stock and scope of the fishery, conservation and enforcement actions taken by an individual state would be expected to contribute insignificantly to a coastwide conservation program required by an FMP or amendment." Charter, § Eight(k), Exhibit 2, P. 24, App.36

See Exhibit 5 App. 97, Atlantic States Marine Fisheries Commission News Release, August 14, 2007. The alternative plan accepted by the Board and the Commission adopted a v-notch based restoration measure in place of the 1/16" minimum length increase for legal sized lobster as adopted by Addendum XI, attached hereto as Exhibit 6, p.4, Sec. 2.1.3.2.2, App. 101.

The Proposed Intervener makes much of the chosen control year for trap allocations in Addendum VII. It chooses to characterize this control date as a "pivotal requirement". See Supplemental Memorandum of the Atlantic States Marine Fisheries Commission, p.1 (hereinafter Supp. Memo). The fact of the matter is that the recommended control date was neither mandatory nor pivotal. It is an issue of economics and allocation rather than one of conservation. The key conservation issue is the number of traps, not who gets the right to fish them.

Yet another example of conservation equivalency illustrates the point. Massachusetts was to provide for lobster trap allotments for the Outer Cape Lobster Management Area (OCLMA) pursuant to Addendum III. The Addendum provided for each lobster fisher's allotment for the year 2002 to be based upon the year 2000 catch report statistics. See Exhibit 7, Addendum III, p.8, App.112. In a press release dated December 17, 2003, it was announced that the ASMFC Lobster Board approved a Massachusetts conservation equivalency proposal for the OCLMA. Instead of allocating traps as provided in Addendum III, Massachusetts preferred and was able to use the years 1999 through 2001 as the qualifying years to identify potential participants. Moreover, Massachusetts was able to allocate traps based on ***"fishing performed during 2000-2003, with pounds as the qualifying parameter."*** See Exhibit 8, American Lobster Management Board Press Release, December 17, 2003, App. 115 (emphasis added). In

this example of conservation equivalency, not only were the qualifying years apparently not pivotal, the trap allocations were ultimately based on pounds landed as opposed to proof of documentation of the number of traps fished in 2001 as provided in Addendum III.[3]

## III. THE ASMFC'S CHARTER, AND AMENDMENT 3 (THE PLAN), PROVIDE AMPLE PROOF THAT RHODE ISLAND COULD HAVE PROFFERED CONSERVATION EQUIVALENCY THAT WOULD NOT HAVE OFFENDED STATE LAW

Under the heading "Standards and Procedures for Interstate Fishery Management Plans", the Charter states:

> The Atlantic States Marine Fisheries Commission recognizes that an effective fishing management program must be carefully designed in order to fully reflect the varying values and other considerations that are important to the various interest groups involved in coastal fisheries. Social and economic impacts and benefits must be taken into account. Management measures should focus on conservation ***while allowing states to make allocation decisions***.

Exhibit 2, Charter, p. 14, App. 26 (emphasis added).

The Charter also provides that if a "fishery management plan so provides, procedures under which the State may implement and enforce alternative management measures to achieve conservation equivalency" may be enacted. Id. p.16, App. 28. (emphasis added). Therefore, the Charter itself contemplates the use of alternative conservation measures.

Thus, the analysis here is whether an Interstate Fisheries Management Plan adopted by the ASMFC, here Amendment 3, allows for individual states to implement and enforce alternative measures to achieve conservation equivalency.

---

[3] See E-mail response from Toni Kerns, Senior FMP Coordinator for the Commission, to an inquiry from a newspaper reporter's question about Rhode Island's need to adopt the regulations it did in which she acknowledged that Rhode Island could have submitted its own proposal for change to its regulatory program or mandatory compliance measure. See Exhibit 9, App. 117.

As shown above, the Plan, or Amendment 3, does make provisions for a state, here Rhode Island, to implement and enforce alternative measures to achieve conservation equivalency. Under the Plan's "Executive Summary," "[n]othing in this section precludes any state or area from promulgating different regulations as long as it can be shown to the Board's satisfaction that alternate regulations provide for equivalent conservation of the lobster resource." Exhibit 3, p iii, App. 43. The "Plan" further states that "Amendment 3, as well as most Commission plans, allows states and the Lobster Management Board the flexibility to change certain measures of the plan to account for changing fishery conditions and to allow for innovation and new management measures." Id. p. iv, App. 44.

The procedures for state conservation equivalency measures can be found in the "Plan" at section 3.5.1, wherein, it states that, "[a] state may submit a proposal for a change to its regulatory programs ***or any mandatory compliance measure under this amendment*** to the Commission, including a proposal for *De Minimus* status." Id., p. 24, App.71 (emphasis added).

Finally, the "Plan" itself acknowledges that "[a]lthough the Atlantic States Marine Fisheries Commission does not have authority to directly compel state implementation of these measures, it will continually monitor the effectiveness of state implementation and determine whether states are in compliance with the provisions of this fishery management plan." Id., p. 27, App. 74. The Plan further provides that "[s]tates are expected to implement these measures ***faithfully under state laws***." Id. (emphasis added).

Adopting regulations which, clearly violate state law, as DEM has done, is not in keeping with faithful implementation under state law. Moreover, the Proposed Intervener references R.I.G.L.§ 20-8-17, arguing that state officials are to carry out the compact in

every particular. See Supp. Memo, at p. 7 fn. 8. First, the state can surely carry out the Compact "in every particular" without violating state law through conservation equivalency, which of course is provided for in the Charter and Plan. Moreover, R.I.G.L. § 20-8-7 also provides that "all officers, bureaus, departments, and persons of and in state government or administration of the State of Rhode Island are authorized and directed at convenient times and upon request of the commission to furnish the commission with information and data possessed by them or any of them…" Rhode Island's representatives had a duty to make the commission aware of its own constitutional provisions and statutes under this mandate.

## IV. THE PLAIN LANGUAGE OF ADDENDUM VII ILLUSTRATES THAT THE CONTROL PERIOD ADOPTED BY RHODE ISLAND WAS AN OPTIONAL ELEMENT FOR MEMBER STATES

The Proposed Intervener attempts to persuade this Court that "optional", as used in Addendum VII, refers to control dates contemplated by the Board for trap allocations. See Supp. Memo, p.5, fn. 5. The Proposed Intervener comes to this conclusion based on a draft of Addendum VII which it included with its pleadings. See Id., Doc. D. at 6-7. What the proposed Intervener avoids, with glaring omission, is that Addendum VII, as adopted, leaves the chosen control dates of 2001-2003 for trap allocations under the heading "Optional Elements". Exhibit 4, p. 5, App. 88.

Had the qualifying control dates recommended by Addendum VII under section 4.2.1.1 been deemed mandatory, the logical conclusion is that upon final adoption, that section would have been included under section 4.1.1, entitled "Mandatory Elements". Id., p. 4, App. 87. Under the title "Mandatory Elements", Addendum VII provides for a moratorium on new permits, standards for qualification, a coordinating committee to

review appeals, trap allocation authority (an authority delegated to the state), an overall Trap Allocation Cap, compliance, and a provision for data dispute. It is following these "Mandatory Elements" that the control dates adopted by DEM fall under the provision "***OPTIONAL ELEMENTS***." Id. (emphasis added). In any event, even it the chosen periods had come under the heading "Mandatory elements", the Plan at section 3.5.1 provides for states to submit proposals to change its regulatory program "or any mandatory compliance measure." See *infra*, p.6. The interpretation of words throughout the regulatory framework are straightforward and should be given their ordinary meaning. Terms such as "Recommend" as used throughout the Compact's Rules and Regulations Exhibit 1[4], "Mandatory", and "Optional" must be given their plain meaning. Indeed, absent ambiguity, courts "examine the plain meaning of the statutory language" to "avoid statutory constructions that create absurd, illogical or inconsistent results". General Motors Corp v. Darlings Auto Mall, 444 F. 3d 98, 108 (1st Cir. 2006), quoting Darlings V. Ford Motor Co., , 855 A.2d, 344, 346 (Me. 2003). There is no ambiguity in the way these terms have been used in the regulatory framework before this Court.

Quite telling, as part of this "optional elements" portion of Addendum VII, is the Proposed Intervener's acknowledgement that New York and New Jersey have not adopted the disputed control date. See Supp. Memo, pp. 7-8, fn. 9. This footnote explains how "verbal communication" from New York "indicates" that New York will allocate traps in accordance with Addendum VII. Likewise, New Jersey will apparently be ceding its allocation authority to the federal government. Id. This is of particular interest in so far as the federal government, through the National Marine Fishery Service (NMFS), regulates those waters in Area 2 which are federal waters based on

---

[4] For further discussion and illumination of the term "recommend" being used in the regulatory framework please refer to Plaintiffs' Memorandum of Law In Support of Plaintiffs' Objection to Atlantic States Marine Fisheries Commission's Motion to Intervene.

"recommendations" made by the ASMFC's Lobster Fishery Management Plan. See Exhibit 3, p 25, App. 72. However, the NMFS, in a Notice to Federal Lobster Permit Holders, recently states that the "NMFS analysis of the Commission's recommendations is presently ongoing and the agency has not determined ***what, if any, of the recommendations it will accept***." Exhibit 10, Notice to American Lobster Permit Holders, June 12, 2007, App. 118 (emphasis added).

## CONCLUSION

Rhode Island representatives had a duty under these circumstances to have knowledge of Rhode Island Law and make the Commission aware of the same. Rhode Island further had a duty to develop a conservationally equivalent plan in consideration of its own Constitution, a question of purely state law. No court is being asked to decide whether the lobster regulations adopted by DEM are wise or necessary. The only question raised by Plaintiffs is whether Rhode Island's implementation of the challenged regulation violates its own constitution. Rhode Island could have and should have proposed a conservation equivalency as opposed to the regulations it chose to adopt. This Court should remand this case to state court and allow the state to interpret its own law and Constitution.

Respectfully submitted,
Plaintiffs,
By their attorney,

/S/ Robert J. Caron

Robert J. Caron, Esq. 5735
55 Bradford Street, Ste 203
Providence, RI 02903
Phone: (401) 621-8600
Fax (401) 274-2480
rcaron@caronolenlaw.necoxmail.com

**CERTIFICATION**

I hereby certify that this document has been filed electronically on 14th day of September, 2007, and is available for viewing and downloading form the ECF system. Undersigned counsel further certifies that on the 14th day of September, 2007 he served copies of this Memorandum in Response to Proposed Intervenor's Supplemental Memorandum to the Court, together with the documents Appendix thereto, by prepaid first-class United States Mail to those listed below.

/S/ Robert J. Caron
Robert J. Caron, Esq. 5735
55 Bradford Street, Ste 203
Providence, RI 02903
Phone: (401) 621-8600
Fax (401) 274-2480
rcaron@caronolenlaw.necoxmail.com

Sean H. Donahue, Esq.
Donahue & Goldberg, LLP
2000 L St., NW Suite 808
Washington, DC 20036

Terence J Tierney, Esq.
Special Assistant Attorney General
150 South Main St.
Providence, RI 02903

Gary Powers, Esq.
Deputy Chief Legal Counsel
RI Dept. of Environmental Management
235 Promenade St.
Providence, RI 02908

Mark A. McSally, Esq.
Kelly, Kelleher, Reilly & Simpson
28 Caswell St.
Narragansett, RI 02882

Undersigned counsel further certifies that on the 14th day of September, 2007, two copies of the above-mentioned Memorandum and Appendix addressed to the Clerk, United States District Court for the District of Rhode Island, were hand delivered to the court along with two courtesy copies of Plaintiffs' Memorandum and Appendix to the Chambers of Chief Justice Mary M. Lisi, United States District Court for the District of Rhode Island. Undersigned counsel has filed the Memorandum by electronic copy but not the Appendix.

________________
Robert J. Caron Esq.