UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RHODE ISLAND FISHERMEN'S ALLIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually,
Plaintiffs,

v. C.A. No. 07-230ML

THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT and W. MICHAEL SULLIVAN, PH.D. in his capacity as the Director of the Rhode Island Department of Environment Management,
Defendants.

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' motion to remand. Plaintiffs initially filed suit against Defendants in Rhode Island Superior Court. Defendants subsequently removed the action to this Court claiming federal question jurisdiction pursuant to 28 U.S.C. § 1441(b). Plaintiffs are an "organization of commercial fishermen and others," appearing by and through its President, and eight individual lobstermen. Complaint ¶ 4. Plaintiffs bring this action against the Rhode Island Department of Environmental Management ("DEM") and its Director seeking injunctive and declaratory relief. More specifically, Plaintiffs seek an order barring the

implementation and/or enforcement of certain regulations[1] adopted by DEM which limit lobster fishing in state waters. Plaintiffs allege that DEM's regulatory scheme violates the Rhode Island Constitution and several state statutes and that the Director's actions are beyond the scope of his authority.

## I. Statutory and Regulatory Framework

The Atlantic States Marine Fisheries Commission (ASMFC)[2] was established by the Atlantic States Marine Fisheries Compact ("Compact"), an interstate agreement consented to and approved by Congress in 1942. Pub. L. 77-539, 56 Stat. 267; see 16 U.S.C. § 5102(3); see also Medeiros v. Atlantic States Marine Fisheries Commission, 327 F. Supp. 2d 145 (D.R.I. 2004), aff'd sub nom. Medeiros v. Vincent, 431 F.3d 25 (1st Cir. 2005), cert. denied sub nom. Medeiros v. Sullivan, 126 S. Ct. 2968 (2006). Fifteen states and the District of Columbia entered into the Compact and agreed that the signatories would "exercise joint regulatory oversight of their fisheries . . . primarily through the development of interstate fisheries management plans" ("IFMPs"). Medeiros, 431 F.3d at 27. The Compact was intended to "promote the better utilization of the fisheries, marine, shell and anadromous of the Atlantic seaboard by the development of a joint program for the promotion and protection of such fisheries and by the

---

[1]Generally, Rhode Island Marine Fisheries Regulations §§ 15.14.2-6 and 6.7-8(a) (2007).

[2]ASMFC has filed a motion to intervene pursuant to Fed. R. Civ. P. 24(a)(2). To be entitled to intervene under Rule 24(a)(2), ASMFC must show that (1) it timely moved to intervene, (2) it has an interest in the suit, (3) the disposition of the suit threatens to create an impediment to ASMFC's ability to protect its interest, and (4) no other party adequately represents its interests. B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541 (1st Cir. 2006); see also Inmates of the Rhode Island Training School v. Martinez, 465 F. Supp. 2d 131, 137 (D.R.I. 2006) (court used a "reasonable measure of latitude" in application of Fed. R. Civ. P. 24(a)(2) noting that the "inherent imprecision" of Rule 24(a)(2)'s individual elements dictates a "commonsense view of the overall litigation") (internal quotation marks and citation omitted). As outlined in this decision, ASMFC has in interest in this matter and meets the requirements of intervention pursuant to Fed. R. Civ. P. 24(a)(2). ASMFC's motion to intervene is granted.

prevention of the physical waste of the fisheries from any cause." Medeiros, 327 F. Supp. 2d at 147 (internal quotation marks and citation omitted). The Compact provides that the duty of ASMFC is to "make inquiry and ascertain . . . such methods, practices, circumstances and conditions as may be disclosed for bringing about the conservation of, the prevention of[,] the depletion and physical waste of the fisheries, marine, shell and anadromous of the Atlantic seaboard." Compact Article IV.

Rhode Island is a signatory to the Compact. Medeiros, 327 F. Supp. 2d at 147. Rhode Island state law authorizes and directs all officers of the state of Rhode Island "to do all things falling within their respective provinces and jurisdiction necessary or incidental to the carrying out of the [C]ompact in every particular; it being hereby declared to be the policy of the state of Rhode Island to perform and carry out the [C]ompact and to accomplish its purposes." R.I. Gen. Laws § 20-8-7. The Compact is binding upon each signatory state until "renounced by it." Compact Article XII.

Until 1993, the decision to participate in an IFMP was voluntary. Medeiros, 431 F.3d at 27; see also Toomer v. Witsell, 334 U.S. 385, 388 n.5 (1948) (noting that, at the time, ASMFC's duties were "largely consultive and advisory"). In 1993, however, Congress enacted the Atlantic Coastal Fisheries Cooperative Management Act ("Atlantic Coastal Fisheries Act"). Medeiros, 431 F.3d at 27; 16 U.S.C. §§ 5101-5108. The purpose of the Atlantic Coastal Fisheries Act is "to support and encourage the development, implementation, and enforcement of effective interstate conservation and management of Atlantic coastal fishery resources." 16 U.S.C. § 5101(b) (emphasis added). Congress noted that because "no single governmental entity has exclusive management authority for Atlantic coastal fishery resources, harvesting of such resources is

frequently subject to disparate, inconsistent, and intermittent State and Federal regulation that has been detrimental to the conservation and sustainable use of such resources and to the interests of fishermen and the Nation as a whole." 16 U.S.C. § 5101(a)(3).

The Atlantic Coastal Fisheries Act required ASMFC to prepare and adopt IFMPs providing for the conservation of coastal fishery resources. Medeiros, 327 F. Supp. 2d at 147; 16 U.S.C. § 5104(a)(1). ASMFC develops IFMPs through species specific management boards, in this particular instance, the American Lobster Management Board. Each state identified in an IFMP is required to implement and enforce the IFMP's measures, usually through state enacted laws or regulations. Medeiros, 327 F. Supp. 2d at 147; 16 U.S.C. §§ 5104(b)(1); 5102(10). ASMFC is responsible for monitoring a state's implementation and enforcement of IFMPs, Medeiros, 327 F. Supp. 2d at 147; 16 U.S.C. § 5104(c), and is required to provide notice to the United States Secretary of Commerce of a state's noncompliance with an IFMP. Medeiros, 327 F. Supp. 2d at 147; 16 U.S.C. § 5105. If the Secretary of Commerce finds that a state has failed to comply with an essential term of an IFMP a "moratorium on fishing may be imposed in the offending member state's coastal waters." Medeiros, 431 F.3d at 28; 16 U.S.C. § 5106(c).

Each member state appoints three representatives to ASMFC and these individuals decide how their state will vote during ASMFC meetings. Compact Article III; Compact Rules and Regulations Article III § 2. The Compact provides that "[n]o recommendation shall be made by the Commission in regard to any species of fish except by the affirmative vote of a majority of the compacting states which have an interest in such species." Compact Article VI. The Atlantic Coastal Fisheries Act and the ASMFC Charter require that fishery management decisions be subject to public disclosure and comment. See 16 U.S.C. § 5104(a)(2)(B); ASMFC Interstate

Fisheries Management Program Charter § 6(c); Joseph A. Farside, Jr., Atlantic States Marine Fisheries Commission: Getting a Grip on Slippery Fisheries Management, 11 Roger Williams U. L. Rev. 231, 249 (2005). A "public information document" is prepared for each IFMP or amendment. ASMFC Charter § 6(c)(3). The public information document contains biological information, fishery issues and potential management options for the IFMP or amendment and is made available to each applicable state "for the purpose of soliciting public comment . . . ." Id. It is the duty of ASMFC and each applicable state to "ensure that the public has an opportunity to review and comment upon the problems and alternative solutions addressed by" the public information document. Id. at § 6(c)(8)(i).

After consideration of the public comments and views developed in response to the public information document, a draft IFMP is prepared. Id. at § 6(c)(5). Upon completion of a draft IFMP or amendment, the ASMFC once again elicits public comment on the draft. Id. at § 6(c)(8)(ii). The ASMFC "will make the draft [IFMP] or amendment and the accompanying [p]ublic [i]nformation [d]ocument widely available to the public, including fishermen, consumers, government agencies and officials, environmental groups, and other interested parties throughout the geographic range of the draft [IFMP] or amendment." Id. Public comments are "evaluated and considered prior to deciding what modifications will be made to the draft [IFMP] or amendment, or draft final [IFMP] or amendment, and prior to approval of the [IFMP] or amendment." Id. at § 6(c)(8)(iv). "This procedural measure allows the public in each state to express whether they would like to be more or less conservative while staying within the scientifically permissible limits for fishery regulation of that species as determined by the Commission." Farside, 11 Roger Williams U. Law Rev. at 249.

## II. Addendum VII

In December 1997, ASMFC adopted amendment 3 to the Interstate Fishery Management Plan for American Lobster. Medeiros, 327 F. Supp. 2d 145. In November 2005, ASMFC adopted addendum VII to amendment 3. Addendum VII is part of a series of efforts by ASMFC to protect the lobster stock in Area 2[3] by imposing limits on fishing activities. Addendum VII contemplates that affected member states will adopt restrictions on lobster fishing by limiting the number of lobster traps based upon an applicant's documented lobster catch during 2001-2003. During the process of adopting addendum VII, ASMFC published a draft addendum VII setting forth, for public comment and American Lobster Management Board consideration, four alternative methods to allocate lobster traps to commercial fishermen. Draft Addendum VII to Amendment 3 to the Interstate Fishery Management Plan for American Lobster, August 2005. The four methods for allocating lobster traps considered in the draft addendum were to grant trap allocation based on the (A) "highest value of [e]ffective [t]raps [f]ished, during 2001-2003"; (B) "highest value of [e]ffective [t]raps [f]ished, during 1999-2003"; (C) "highest value of predicted traps fished over three years, 2001-2003, based solely on the relationship between pounds reported and maximum traps fished"; and (D) "highest value of predicted traps fished over five years, 1999-2003, based solely on the relationship between pounds reported and maximum traps fished." Id. at 6-7 (emphasis in original). Consistent with ASMFC's public disclosure requirements, public meetings to discuss the draft addendum were held in Rhode Island, Massachusetts, Connecticut and New York.

The American Lobster Management Board considered draft addendum VII at its meeting

[3] Area 2 includes Massachusetts and Rhode Island state waters and federal waters.

on October 31, 2005. After considering public comment and conducting its own deliberation, the Board voted to approve addendum VII, specifically adopting option A, granting trap allocation based on the highest value of effective traps fished during 2001-2003. Id. at 46-48, 57. As approved, addendum VII requires that applicable states allocate traps based upon the highest value of effective traps fished during 2001-2003.

DEM promulgated its regulatory scheme to bring the state "into compliance with Addendum VII . . . as adopted by [ASMFC] in November 2005. The purpose of the [regulatory scheme is] to help achieve a healthy and sustainable lobster resource in Area 2 by capping effort at 2001-2003 levels, and establishing a mechanism for future adjustments in effort in response to changes in resource status." Rhode Island Marine Fisheries Regulation 15.14.2-1 (2007). DEM's regulatory scheme is based upon an applicant's lobster landings during the period of time between 2001 and 2003. According to the DEM regulation, in order for an applicant to be eligible for lobster trap allocation, the applicant must have (1) held a DEM issued commercial lobster license, or a federal lobster permit for Area 2, at some point during 2001-2003; (2) documented lobster landings with traps from Area 2 during 2001-2003;[4] and (3) renewed the license/permit annually since 2003, or, an applicant is eligible for lobster trap allocation if the applicant lawfully acquired a federal lobster permit that meets certain requirements, or acquired the vessel and gear of a Rhode Island license holder who meets certain qualifications. Rhode Island Marine Fisheries Regulation 15.14.2-6. Plaintiffs acknowledge that DEM "essentially adopted" ASMFC's addendum VII. Complaint at ¶ 17.

---

[4]A specific regulation applied to those applicants who were incapacitated during the period.

III. Analysis

Defendants removed this action pursuant to 28 U.S.C. §§ 1446(a) and 1441(b).[5] Section 1441(b) provides, in part, that any "civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties." 28 U.S.C. § 1441(b). It is well settled that Defendants bear the burden of establishing federal jurisdiction and that the removal statute is strictly construed with any doubts about the propriety of removal construed against the party seeking removal. In re Pharmaceutical Industry Average Wholesale Price Litigation, 457 F. Supp. 2d 77 (D. Mass. 2006).

Plaintiffs argue that their claims are based entirely on questions of state law. Defendants aver that the claims arise under federal law because they involve the interpretation of an interstate compact. To determine whether a claim arises under federal law courts look to the well-pleaded complaint rule. Templeton Board of Sewer Commissioners v. American Tissue Mills of Massachusetts, Inc., 352 F.3d 33 (1st Cir. 2003). Under the well-pleaded complaint rule the question of jurisdiction must be determined from Plaintiffs' statement of claim in the complaint. Id. Cases arise under federal law when "federal law creates the cause of action or . . . the plaintiff[s'] right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California, 463 U.S. 1, 27-28 (1983). A matter arises under federal law if the "right or

[5]"The 'arising under [ . . .] laws of the United States' language of 28 U.S.C. § 1441(b) mirrors the statute conferring the court's Federal Question jurisdiction and, thus, jurisprudence construing 28 U.S.C. § 1331 is equally applicable to the current removal jurisdiction analysis." Able Sales Company, Inc. v. Mead Johnson Puerto Rico, Inc., 420 F. Supp. 2d 1, 7-8 (D.P.R. 2006).

immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff[s'] cause of action." Gully v. First National Bank, 299 U.S. 109, 112 (1936); see also Shulthis v. McDougal, 225 U.S. 561, 569 (1912) (suit must "really and substantially involve[] a dispute or controversy respecting the validity, construction, or effect of [federal] law, upon the determination of which the result depends"). In short, the "Supreme Court of the United States has made clear that, in deciding (for removal purposes) whether a case presents a federal claim or right, a court is to ask whether the plaintiff[s'] claim to relief rests upon a federal right, and the court is to look only to plaintiff[s'] complaint to find the answer." Rosello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 10 (1st Cir. 2004) (emphasis in original) (internal quotation marks and citation omitted).

The construction of an interstate compact sanctioned by Congress presents a question of federal law. Cuyler v. Adams, 449 U.S. 433 (1981); Pievsky v. Ridge, 98 F.3d 730 (3d Cir. 1996); United States v. Currier, 836 F.2d 11 (1st Cir. 1987). "[A] case involving the construction of an interstate compact which requires a judicial determination of the nature and scope of obligations set forth therein 'arises' under the 'laws' of the United States. . . ." League to Save Lake Tahoe v. Tahoe Regional Planning Agency, 507 F.2d 517, 522 (9th Cir. 1974) (emphasis added). The rights and obligations created by an interstate compact are "federal, not state, in character." Id. at 523 n.13.

This Court must look to Plaintiffs' complaint in evaluating the motion to remand. Templeton, 352 F.3d 33. In the complaint, Plaintiffs allege that DEM "essentially adopted . . . ASMFC's Addendum VII." Complaint at ¶ 17 (emphasis added). That allegation cannot be read in a vacuum. The gravamen of Plaintiffs' position is that Defendants could have adopted a

different regulatory scheme by which it would assign lobster trap allocation that would not violate state law. Plaintiffs' argue that compliance with addendum VII is optional while Defendants argue that compliance is mandatory.[6] Plaintiffs' complaint, therefore, directly challenges the enforcement and implementation of an IFMP. Whether DEM could have adopted an alternative allocation scheme under the IFMP involves an interpretation of the "nature and scope" of Rhode Island's rights and obligations under the Compact. See League to Save Lake Tahoe, 507 F.2d at 522. Those rights and obligations find their source in the Compact and have been solidified as a result of Congress' enactment of the Atlantic Coastal Fisheries Act. The Atlantic Coastal Fisheries Act requires Compact member states to implement and enforce IFMPs. Medeiros, 327 F. Supp. 2d at 147. To determine whether or not Rhode Island must strictly comply with addendum VII, this Court must look to Rhode Island's and ASMFC rights and obligations pursuant to the Compact and its progeny, the Atlantic Coastal Fisheries Act and any applicable regulations and/or procedures.

Federal jurisdiction of this action is pragmatic considering the particular circumstances of this matter. The purpose of addendum VII is to "establish a multi-state effort control program for [l]obster [c]onservation . . . that governs traps fished in state and federal waters . . . ." Addendum VII § 3 (emphasis added). An interstate compact transfers part of a state's authority to another state or states or to the agency created to run the compact. State of Nebraska v. Central Interstate

[6]Plaintiffs argue that a Compact member state need only comply with the purpose and goal of an IFMP. Plaintiffs aver that addendum VII is merely a recommendation because amendment 3 allows a Compact member state to promulgate different regulations as long as the state can show that the alternate regulation provides for equivalent conservation of the lobster resource. See Amendment 3 to the Interstate Fishery Management Plan for American Lobster at iii and §§ 3.5, 3.6. At oral argument, however, Plaintiffs argued that they had a right under the Compact to suggest an alternate trap allocation scheme. Plaintiffs' argument that their right to suggest an alternate allocation scheme itself flows from the Compact supports this Court's conclusion that Plaintiffs' claim is grounded in the Compact, and thus arises under federal law. Cuyler, 449 U.S. 433.

Low-Level Radioactive Waste Commission, 974 F. Supp. 762 (D. Neb. 1997). An interstate compact may "directly impact the population, the economy, and the physical environment in the whole of the compact area." Entergy Arkansas, Inc. v. Nebraska, 358 F.3d 528, 542 (8th Cir. 2004). A suit involving a state's obligations pursuant to a compact may raise "delicate questions bearing upon the relationship among separate sovereign polities with respect to matters of both regional and national import." Id.

The Compact and the Atlantic Coastal Fisheries Act involve local concerns of the signatory states as well as significant national interests. See generally League to Save Lake Tahoe, 507 F.2d at 523. The subject matter of addendum VII, the American lobster, can and does migrate and cross jurisdictional boundaries between the waters of the Atlantic states as well as those of the federal government. See generally 16 U.S.C. § 5101(a)(1). Inconsistent laws and regulations could have the detrimental effect of allowing lobsters protected in one jurisdiction from not being protected in another jurisdiction and thus potentially depleting the resource. See generally 16 U.S.C. § 5101(a)(3). Plaintiffs' claim is grounded in the Compact; this Court therefore concludes that Plaintiffs' claim satisfies the "arising under" requirements for the Court's exercise of federal jurisdiction.

For the reasons set forth herein, Plaintiffs' motion to remand is DENIED.

SO ORDERED

Mary M. Lisi
Chief United States District Judge
November 5, 2007