**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND FISHERMEN'S ALLIIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually,** ***Plaintiffs*** | : | |
| **v.** | : | **C.A. NO. 1:07 – cv - 230** |
| **THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT And W. MICHAEL SULLIVAN, PH.D. In his capacity as the Director of the Rhode Island Department of Environmental Management, et al** ***Defendants*** | : | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now come the Defendant State of Rhode Island Department of Environmental Management and the Intervener Atlantic States Marine Fisheries Commission and the Rhode Island Lobstermen Association (collectively the "Defendants") pursuant to Federal Rule of Civil Procedure 56 and hereby move this Honorable Court to enter summary judgment for the Defendants and against the Plaintiffs in the above captioned matter. The Defendants respectfully refer the Court to the accompanying memorandum for support of the instant motion.

On the basis of the above and the supporting memorandum, the Defendants pray that their motion for summary judgment be granted.



PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,

RI Department of Environmental Management
By its Attorneys,

/s/ Terence J. Tierney
Terence J. Tierney, Bar No. 2583
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2307
Fax: (401) 222-3016

/s/ Gary Powers
Gary Powers, Bar No. 2321
Deputy Chief Legal Counsel
Office of Legal Services
R.I. Dept. of Environmental Management
235 Promenade Street
Providence, RI 02908
Tel: (401) 222-4700 ext 2308
Fax: (401) 222-3378

/s/ Sean H. Donahue
Sean Donahue, Esquire
2000 L. Street, NW Suite 808
Washington, DC 20036

/s/ Mark A. McSally
Mark A. McSally, Esquire
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

## CERTIFICATION

I, the undersigned, hereby certify that the within document was served by electronic means (ECF) on this 22nd day of February,.2008 to the following:

Robert Caron, Esquire
55 Bradford Street, Suite 203
Providence, RI 02903
RCaron@caronolenlaw.necoxmail.com



PDF created with pdfFactory trial version www.pdffactory.com

/s/ Terence J. Tierney



PDF created with pdfFactory trial version www.pdffactory.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND FISHERMEN'S ALLIIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually,** ***Plaintiffs*** | : | |
| **v.** | : | **C.A. NO. 1:07 – cv - 230** |
| **THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT And W. MICHAEL SULLIVAN, PH.D. In his capacity as the Director of the Rhode Island Department of Environmental Management, et al** ***Defendants*** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendants State of Rhode Island Department of Environmental Management (DEM) and W. Michael Sullivan, and Defendants-Interveners Atlantic States Marine Fisheries Commission (ASMFC) and the Rhode Island Lobstermen Association (collectively, "Defendants") respectfully submit this Memorandum in Support of their



PDF created with pdfFactory trial version www.pdffactory.com

Opposition to Plaintiffs' for Declaratory Judgment and Motion For Preliminary Injunction and in support of Defendants' Motion For Summary Judgment.

This case was filed initially filed in Rhode Island Superior Court, and was removed to this Court. Plaintiffs challenge Rhode Island Marine Fisheries Regulation 15.14.2 (2007), which was promulgated by Defendant DEM to conserve the American lobster fishery in Rhode Island waters by limiting lobster fishing effort. The regulation implements the fishing effort control provisions set forth Addendum VII to Amendment 3 of the ASMFC's Interstate Fishery Management Plan for American Lobster, consistent with Rhode Island's obligations as a member of the ASMFC compact.

The challenged regulation restricts lobster fishing effort by allocating commercial lobster traps based upon fishermen's documented fishing history during 2001-2003. This Court summarized the disputed state trap allocation regulations, as well as the relevant aspects of the ASMFC interstate fishery management process and Addendum VII, in its Memorandum and Order denying Plaintiff's motion to remand the case to state court. See Mem. & Order at 2-7 (Nov. 5, 2007). See also Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance (Aug. 31, 2007).

Part I of this Memorandum explains why Plaintiffs are not entitled to the requested preliminary injunction. Part II shows why Defendants are entitled to summary judgment. To avoid duplication of argument, our arguments on summary judgment in Part II refer back to and incorporates by reference our discussion of the legal merits of Plaintiffs' claims in Part I, before proceeding to address those claims that Plaintiffs raised



PDF created with pdfFactory trial version www.pdffactory.com

in their complaint, but did not rely upon in their present motion for a preliminary injunction.

## I . DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND MOTION FOR PRELIMINARY INJUNCTION

### A. Preliminary Injunction Standard

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 868, 972 (1997) (per curiam) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2948, pp. 129-30 (2d ed. 1995)).[1] See also All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir.1989) ("A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant *clearly establishes* the burden of persuasion as to the four requisites."); Wine & Spirits Retailers, Inc. v. Rhode Island, 364 F. Supp.2d 172, 175 (D.R.I. 2005) (preliminary injunction is an "extraordinary remedy"), aff'd 418 F.3d 36 (1st Cir. 2005).

In determining whether to grant a preliminary injunction, the courts consider four factors:

> the [movant's] likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the

---

[1] Plaintiffs (Mem. at 3-4) cite Rhode Island decisions for the standards governing preliminary injunctions. But any request for interlocutory relief in this case, which the Court has already determined to arise under federal law, is governed by Federal Rule of Civil Procedure 65 and federal procedural common law. See, *e.g.*, Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996). Even in diversity cases, federal procedural law governs the issuance of preliminary injunctions. See Ferrero v. Associated Materials Inc., 923 F.2d 1441, 1448 (11th Cir. 1991) (citing Hanna v. Plumer, 380 U.S. 460 (1965)).



PDF created with pdfFactory trial version www.pdffactory.com

> hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (quoting Black Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)) (first brackets added; second brackets added by Esso court). "While all these factors must be weighted, the cynosure of this four-part test is more often than not the movant's likelihood of success on the merits." Borinquen Biscuit Corp v. M.V. Trading Corp., 443 F.3d 112, 115 (1st Cir. 2006) (citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993), for the proposition that a likelihood of success on the merits is the "sine qua non'" under the preliminary injunction test).

Fed. R. Civ. P. 65, which governs the grant of preliminary relief in federal courts, "does not place upon the [non-moving party] the burden of coming forward and presenting its case against a preliminary injunction." Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70, 415 U.S. 423, 442 (1974) Instead, "[t]he party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Esso Standard Oil Co., 445 F.3d at 18 (citing Nieves-Marquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir. 2003)).

In this case, Plaintiffs have failed to establish that any of the four factors advanced by them in support of their motion favors the issuance of a preliminary injunction. As demonstrated below, they have failed to demonstrate a likelihood of success on the merits with respect to any of their challenges to Defendant Rhode Island Department of Environmental Management's lobster fishery management regulations, i.e., Rhode Island Marine Fisheries Regulations Part 15.14.2- Area 2 Lobster Trap Effort Control. They have failed, in fact, to introduce *any evidence*, in any form, with respect



PDF created with pdfFactory trial version www.pdffactory.com

to any of the factors, and have failed to demonstrate irreparable harm from the denial of the requested preliminary injunction. PCI Transp., Inc. v. Fort Worth & Western R. Co., 418 F.3d 535, 546 (5th Cir. 2005) ("[t]he plaintiff has the burden of introducing sufficient evidence to justify the grant of a preliminary injunction"); see Campbell Soup Co. v. Giles, 47 F.3d 467, 472 (1st Cir. 1995).

Moreover, as demonstrated by the attached Affidavit of Mark R. Gibson, an injunction barring enforcement of the regulations would cause serious harms to Defendant by upsetting a carefully crafted program for allocating rights to use the scarce lobster resource in state waters, and would bring the State of Rhode Island out of compliance with its obligations under the ASMFC compact and, thereby, threaten all lobster fishers attempting to land lobsters in the State of Rhode Island. An injunction would also threaten serious harm to an already depleted fishery that is important to the livelihoods and welfare of many, and would harm those fishermen who hold trap allocations in conformity with the challenged regulations.

## B PLAINTIFFS HAVE FAILED TO DEMONSTRATE ANY LIKELIHOOD OF SUCCESS ON THE MERITS.

### 1. RIMFR Part 15.14.2 Does not Violate Rhode Island Constitution Article 1, § 17.

Plaintiffs maintain that the State's trap allocation regulation contravenes language in the Rhode Island Constitution confirming the right of the people "to enjoy and freely exercise all rights of the fishery, and the privileges of the shore, to which they have been heretofore entitled under this charter and usages of this state.." Art. I, § 17. See Plaintiffs' Memorandum of Law In Support of Complaint For Declaratory Judgment and Motion For Preliminary Injunction ("Plft. Mem.") at 5; Plaintiffs Complaint for



PDF created with pdfFactory trial version www.pdffactory.com

Declaratory Relief and Motion for Preliminary Injunction ("Complaint"), Count I. If Article 1, §17 were given the sweeping interpretation suggested by the Plaintiffs, no conservation measures could be imposed upon fishers including size restrictions, possession limits, or the prohibition on the taking of certain endangered or threatened species. Such measures, like the challenged Rhode Island Marine Fisheries Regulations Part 15.14.2 - Area 2 Lobster Trap Effort Control, are intended to restrict the taking of a marine resource in order to conserve that species.

But Article I, § 17 of the state Constitution does not, as Plaintiffs maintain, prevent the State from imposing regulatory restrictions to protect fisheries and other natural resources. To the contrary, the state's authority to protect such resources by regulations is expressly confirmed by Section 17 itself. After affirming the public's right to "enjoy and freely exercise all the rights of the fishery" the fishery, Section 17 provides that the people

> shall be secure in their rights to the use and enjoyment of the natural resources of the state with due regard for the preservation of their values; and it shall be the duty of the general assembly to provide for the conservation of the air, land, water, plant, animal, mineral and other natural resources of the state, and to adopt all means necessary and proper by law to protect the natural environment of the people of the state by providing adequate resource planning for the control and regulation for the use of the natural resources of the state and for the preservation, regeneration and restoration of the natural environment of the state.

Construed as a whole, Section 17 leaves broad discretion to the state to adopt appropriate measures to conserve marine and other natural resources. In its recent decision in Riley v. Rhode Island Department of Environmental Management, No. 2006-175-Appeal (February 14, 2008) (copy attached), the Rhode Island Supreme Court interpreted Article I, Section 17 as follows:



PDF created with pdfFactory trial version www.pdffactory.com

> Our canons of constitutional interpretation require that we look at the plain language of section 17, and it is clear to us that the right of fishery is qualified by the concomitant language of the 1970 amendment, which imposes a duty on the General Assembly to preserve, regenerate, and conserve through resource planning. This is consistent with this Court's long-standing view that the right of fishery in Rhode Island belongs to the general public, and to no particular individual. See, e.g., Cherenzia v. Lynch, 847 A.2d 818, 823-24 (R.I. 2004); Opinion to the Senate, 87 R.I. at 38, 137 A.2d at 525-26 (the constitutional guarantee of free fishery is for the benefit of all people and gives no peculiar rights to those resorting to it for commercial purposes); State v. Kofines, 33 R.I. 211, 224, 80 A. 432, 437 (1911); In re Incurring of State Debts, 19 R.I. 610, 613, 37 A. 14, 15 (1896) (defining the term "people," as used in article 1, section 17 of the Rhode Island 14 Constitution as broad and comprehensive, comprising all the inhabitants of the state); State v. Cozzens, 2 R.I. 561, 563 (1850).

Riley, Slip Op. at 13-14.

*Riley* is consistent with longstanding principles of Rhode Island law confirming the state's broad authority to regulate the fisheries for the public good. Applying Rhode Island Constitution Article 1, §17 in its entirety, the Rhode Island Supreme Court in Hernia v. Lynch, 847 A.2d 818, 822 (R.I. 2004), held that "Within the constitution's broad grant of legislative power to the General Assembly lies its plenary power to regulate the fishing resources of the state." (citing Opinion to the Senate, 87 R.I. 37, 40, 137 A.2d 525, 526 (1958); Jackvony v. Powel, 67 R.I. 218, 225, 21 A.2d 554, 557 (1941); State v. Kofines, 33 R.I. at 239, 80 A. at 443).

Similarly, in Kennedy v. State, 654 A.2d 708 (R.I. 1995), the Court stated that the General Assembly "may exercise any of such powers, subject only to those limitations expressly or implicitly found in the Constitution of the United States or the Constitution of the State of Rhode Island." (citing Kass v. Retirement Board of the Employees' Retirement System of the State of Rhode Island, 567 A.2d 358, 360 (R.I. 1989); In re Advisory Opinion to the House of Representatives, 485 A.2d 550, 553 (R.I. 1984)). In short, the Rhode Island Supreme Court has long recognized that "...notwithstanding the



PDF created with pdfFactory trial version www.pdffactory.com

provisions of sec. 17, the power of the legislature to regulate fisheries in the water of this state is plenary, and is no longer open to question." Opinion to the Senate, 87 R.I. at 40, 137 A.2d at 526 (Citations omitted).

Due to the broad grant of legislative power granted to the General Assembly by the Rhode Island Constitution, any challenged legislation enjoys the presumption of constitutional validity. Cherenzia, 847 A.2d at 822; Fritz v. Presbrey, 44 R.I. 207, 116 A. 419 (1922); Gorham v. Robinson, 57 R.I. 7, 186 A. 832 (1936); In Re Advisory Opinion to the House of Representatives, 485 A.2d at 552. The Legislature is "presumed to know the state of existing relevant law when it enacts or amends a statute," Smith v. Retirement Board of Employees' Retirement System of the State of Rhode Island, 656 A.2d 186, 189 (R.I. 1995), and "all laws regularly enacted by the Legislature are presumed to be constitutional and valid." City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). See McDonald v. Bd. of Election Comm'rs, 394 U.S. 802, 809, 89 S.Ct. 1404, 22 L.Ed.2d 739 (1969) ("Legislatures are presumed to have acted constitutionally....").

Well established law confirms the State's authority to impose regulations designed to protect the lobster fishery, even if (as is the case with many resource conservation laws) the effect of those regulations is to impose restrictions upon particular parties' access to the resource. Plaintiffs' claim under Article I, Sec. 17 of the Rhode Island Constitution is without any merit.

**2. RIMFR 15.14.2 DOES NOT VIOLATE THE EQUAL PROTECTION PRINCIPLE OF RHODE ISLAND'S CONSTITUTION, ARTICLE I §2.**

Nor is there any merit to Plaintiffs' contention that the trap allocation regulations should be subjected to strict scrutiny under Article I, Section 2, of the Rhode Island Constitution. Pltf. Mem. 8; Complaint, Count II. Strict scrutiny is warranted under that



PDF created with pdfFactory trial version www.pdffactory.com

provision only if a measure either infringes upon the "fundamental rights" or "results in the creation of a suspect classification." Boucher v. Spayed, 459 A.2d 87, 91 (R.I. 1983). Regulation 15.14.2 neither infringes upon any fundamental rights nor creates a suspect classification. The equal protection clause of the Rhode Island Constitution, Article I, Section 2, and the equal protection clause of the Fourteenth Amendment to the United States Constitution are "coextensive." In re Jeramie N., 688 A. 2d 825, 828 (R.I. 1997). Thus, throughout this Memorandum, Defendants will cite federal and Rhode Island case law interchangeably given that the Rhode Island Supreme Court consistently applies paralelled analysis to both clauses. See Rhode Island Depositors Econ. Prot. Corp. v. Brown, 659 A.2d 95 100 (R.I. 1995).

**a. No Fundamental Right is Infringed by RIMFR Part 15.14.2.**

Under the Rhode Island Constitution, when courts examine legislative acts or regulations that allegedly violate the Fourteenth Amendment, unless a statue or regulation either "'infringes upon fundamental rights or results in the creation of a suspect classification,'" or "employs a gender-based classification," the act or regulation is subject to "minimal-scrutiny" to determine whether it is "'rationally related to a legitimate state interest.'" Kennedy, 654 A.2d at 712 (internal quotations retained, citations omitted). Similarly, when an economic regulation neither infringes upon a fundamental right, nor results in a "suspect classification," the act or regulation is also subject to "minimal scrutiny." Cherenzia, 847 A.2d at 823 (referencing Kennedy, 654 A.2d at 712).



PDF created with pdfFactory trial version www.pdffactory.com

Plaintiffs' reliance upon a fundamental right to exploit the State's fishery is without support in Rhode Island law. In Riley, the Rhode Island Supreme Court recently confirmed that:

> This Court never has held that a fundamental right of fishery has been implicated and applied strict scrutiny to such regulations. As a result, this Court has applied a rational-basis analysis when testing the constitutionality of fishing regulations and statutes. See Cherenzia, 847 A.2d at 824, 825 (holding that no fundamental right was implicated by statute and applying a rational-basis test). We see no reason to depart from that precedent now."

Riley, Slip Op., at 17.

The Rhode Island Supreme Court in Cherenzia explained that legislation can implicate a constitutionally protected state or federal fundamental right in several different ways. First, a protected fundamental right may be implicated when the legislation being examined infringes upon an "enumerated constitutional right, such as freedom of speech or the right to assembly" or when the legislation infringes "upon interests fundamental to our concept of ordered liberty, such as the right to privacy or the right to travel." Cherenzia, 847 A.2d at 823 (citing In re Advisory Opinion to the House of Representatives, 519 A.2d at 582). The Court also noted that the United States Supreme Court, in cases under the parallel federal Equal Protection provision of the Fourteenth Amendment, protects liberty interests, "but that such interests include freedom from bodily restraint, the right of the individual to contract, the right of the individual to engage in the common occupations of life, and 'generally to enjoy those privileges long recognized * * * as essential to the orderly pursuit of happiness by free men.'" Cherenzia, 847 A.2d at 823 (quoting Lynch v. Gontarz, 120 R.I. 149, 156, 386 A.2d 184, 188 (1978) (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923))).



PDF created with pdfFactory trial version www.pdffactory.com

Plaintiffs argue that they have a constitutionally protected fundamental right to earn a livelihood as a commercial fisherman in a particular manner. However, for equal protection purposes, it has been well settled by the courts that no such fundamental right exists and that a "rational basis" review, instead of "strict scrutiny," is the proper standard of review for legislation or regulations impinging on such a right. Medeiros v. Sullivan, 327 F. Supp. 2d 145 (D. R.I. 2004), aff'd, 431 F.3d 25 (1st Cir. 2005), cert. denied 126 S.Ct. 2968 (2006) (citing Dittman v. California, 191 F.3d 1020, 1031 n. 5 (9th Cir.1999); N.Y. State Trawlers Ass'n v. Jorling, 16 F.3d 1303, 1311 (2d Cir.1994); Whittle v. United States, 7 F.3d 1259, 1262 (6th Cir.1993); Sisk v. Tex. Parks and Wildlife Dep't, 644 F.2d 1056, 1058 n. 5 (5th Cir.1981) ("[F]ishing is not a fundamental right...."); Cherenzia, 847 A.2d at 823-24). Further, Plaintiffs' argument centers around their purported desire to maximize income by being allocated traps to catch lobsters. CITE Such economic concerns, however, do not constitute a fundamental right. Kennedy, 654 A.2d at 712.

Plaintiffs also assert that the Royal Charter of the State of Rhode Island, and Article 1, §17 of the Rhode Island Constitution, provide them with unrestrained access to the commercial fishery of Rhode Island. [CITES] However, in Cherenzia, the Rhode Island Supreme Court stated that the very nature and scope of the right to fish that Art. 1, §17 protects is not unqualified; rather it anticipates that reasonably legislative regulation is necessary to properly effectuate that right. Cherenzia, 847 A.2d at 824. The Court went on to say that, "'legislative restriction is indispensable to secure to the public the benefit of the * * * fishery' and effectuate the intended scope of the constitutional right." Cherenzia, 847 A.2d at 824 (quoting State v. Cozzens, 2 R.I. 561, 564 (1850)). While Art. 1, §17 generally protects all Rhode Islanders' equal access to the public fishery



PDF created with pdfFactory trial version www.pdffactory.com

which "gives the benefits of fishery to all the people in equal measure," Opinion to the Senate, 87 R.I. at 38, 137 A.2d at 525-26., that provision does not guarantee each citizen identical rights of fishery, a right to fish commercially, the right to earn a living through the fishery, or the right to fish free from governmental regulation. In fact, as previously noted, Art. 1 §17 expressly requires the General Assembly to exercise its plenary authority to regulate, protect and conserve the state's fisheries resources for all Rhode Islanders. Plaintiffs have identified not a single case that supports their contention that their "rights of fishery" under Art. 1, §17 give them a fundamental right to commercially exploit public fishery resources, to fish in a manner that maximize their personal economic gain, or to fish on an identical footing with all other commercial fishermen.

The "rights of fishery" preserved in Art. 1 §17 do not guarantee Plaintiffs the right to harvest lobster employing a particular device of their choosing and the right of "access to fishery" protected by the Rhode Island Constitution does not give Plaintiffs an unfettered right to harvest a species in particular manner that supersedes the General Assembly's (and, by delegation, DEM's) constitutional duty to protect the natural resources of the state for all Rhode Islanders. Plaintiffs have cited no case law that recognizes a fundamental right to engage in the occupation of one's choosing. Although the Rhode Island Supreme Court has acknowledged the existence of a certain liberty interest in pursuing the common occupations of life Id. (citing Cherenzia, 847 A.2d at 823), that interest does not entitle Plaintiffs to engage in any occupation, in whatever manner they see fit, free from reasonable governmental regulation. Unlike most occupations, commercial fishing is an occupation that exploits public natural resources for the financial benefit of an individual; natural resources that the government is



PDF created with pdfFactory trial version www.pdffactory.com

entrusted with protecting for all of the society. In the present matter, the General Assembly and, by delegation, DEM imposed reasonable restrictions on the commercial fishing trade pursuant to a constitutional obligation to protect and conserve marine resources from over-exploitation. Plaintiffs' interest in utilizing stationary traps to harvest lobsters does not trump the state's obligation to protect its fishery resources for the general welfare of its citizenry.

While the Court in Cherenzia was dealing with a regulation governing a certain gear type in four ponds, the regulation in question in that case was duly promulgated with the same intent as was the regulation in question in this case: to protect both the fishery and the general welfare of the citizenry of Rhode Island. Similarly, just as no fundamental constitutional right existed in that case to fish however the commercial fishermen deemed to be the most efficient method, no fundamental constitutional right exists for the Plaintiffs to commercially fish for a living taking a specific species by a specific gear type. Also exactly as in Cherenzia, RIMFR Part 15.14.2 does not deny the fishermen equal access to the fishery and therefore the fundamental right of equal access to the state's resources was not infringed upon by RIMFR Part 15.14.2. Cherenzia, 847 A.2d at 824. In addition, no such guarantee is contained in Art. 1 §17. In fact, the Court in Cherenzia stated that, "On the contrary, we have interpreted art. 1, sec. 17 to mean that 'fishing must be carried on for the ultimate benefit of the people of the state and not merely for the profit and emolument of the fishermen engaged in the business.'" Cherenzia, 847 A.2d at 824 (quoting Opinion to the Senate, 87 R.I. at 38-39, 137 A.2d at 526).

As such, no fundamental constitutional right has been infringed upon and



PDF created with pdfFactory trial version www.pdffactory.com

therefore the standard of review remains rational basis. Plaintiffs have not even alleged that the trap allocation regulations lack a rational basis. Any such claim, were it raised, would be certain to fail. Defendant DEM adopted the trap allocation regulation to implement the State's obligations pursuant to the ASMFC Compact and the ASMFC's American Lobster Fishery Management Plan. Member states are obligated to implement such plan requirements, see Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance at 5-7 (Aug. 31, 2007), and in so doing, they secure for their citizens the benefits of an interstate management regime that safeguards valuable marine resources that straddle state boundaries.

Plaintiffs have not challenged the rationality of the Addendum VII itself. But it is evident that the underlying requirements of Addendum VII would readily satisfy the rational basis test. The fishing effort controls in Addendum VII arise from the ASMFC's longstanding and well documented concerns over the troubled state of the Southern New England lobster fishery, including the Rhode Island lobster fishery. See Affidavit of Toni Kerns. The trap allocation methodology adopted in Addendum VII followed from an exhaustive ASMFC process, including extensive hearings and comments from affected fishermen, and was intended to fulfill conservation objectives while also protecting the interests of fisherman most likely to be adversely affected by limitations on fishing effort, namely, those that had been active during a recent three-year period. [See Toni Kerns Affidavit; See also Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance at 2-5 (Aug. 31, 2007).]



PDF created with pdfFactory trial version www.pdffactory.com

**b. RIMFR Part 15.14.2 Does Not Create a Suspect Classification**

Nor is any suspect classification at issue in this case. Commercial fishermen are not a suspect class for equal protection purposes, unlike a racial or ethnic minority or a group discriminated based upon "race, alienage, or national origin." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440 (1985); Sisk v. Tex. Parks and Wildlife Dep't, 644 F.2d 1056, 1058 n. 5 (5th Cir.1981) ("[F]ishing is not a fundamental right nor is the class of commercial fishermen a suspect class."); Medeiros, 431 F.3d at 29 n. 2 (citing Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 n. 4, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976)); Mills v. State of Me., 118 F.3d 37, 47 (1st Cir.1997) (defining "suspect class" as "a class of persons characterized by some unpopular trait or affiliation ... [that would] reflect any special likelihood of bias [against them] on the part of the ruling majority") (citation omitted.) Also, while the concept of equal protection mandates like treatment of all persons similarly situated, a fundamental principle of equal protection analysis is that not all legislative classifications are constitutionally impermissible. See Boucher v. Sayeed, 459 A.2d 87, 91 (R.I. 1983); Dowd v. Rayner, 655 A.2d 679 (R.I. 1995); Kennedy, 654 A.2d at 713. State legislatures ordinarily possess broad discretion in enacting laws that affect some classes of citizens differently than others. Kennedy, 654 A.2d at 713. The power of the General Assembly in this subject area cannot be over-emphasized. In analyzing constitutional challenges to legislative classifications, this Court must determine whether the differential treatment properly furthers an appropriate governmental interest. Id. at 713.

Plaintiffs argue that, under RIMFR Part 15.14.2, "groups of fishermen possess the same licenses to fish commercially, yet some are wholly excluded from a valuable



PDF created with pdfFactory trial version www.pdffactory.com

resource, lobster, based on arbitrary historic landings." Mem at 8-9. First, such a statement is factually inaccurate, in that the subject regulation merely restricts the potential to employ a particular type of gear, i.e., stationary traps, to harvest lobsters. All holders of a Multi-Purpose Commercial Fishing License are permitted to land up to one hundred pounds (100 lbs. ) of lobsters per day or up five hundred pounds (500 lbs. ) of lobsters on trips of five days or longer if the lobsters are harvested by gear other stationary traps. RIMFR Part 15.14.2 does not infringe upon the constitutionally protected "rights of fishery," as discussed previously, and no "suspect classification" is created by the regulation, this Court should employ a minimal-scrutiny analysis for this matter. And as part of that analysis, if the classification created by the regulation has any reasonably basis for justification, the statute should be upheld as constitutional. See Cherenzia, 847 A.2d at 825 (citing Kennedy, 654 A.2d at 712-13 (citing McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

In Riley, the Court had occasion to consider an analogous situation to the case at bar. In the Riley matter, an applicant was denied issuance of a license by which he would have had the authority to harvest the restricted and lucrative fisheries sectors, which included six species of finfish, one species in the shellfish category (quahogs), and one species in the crustacean category (lobster). In holding the statutory and regulatory licensing scheme was rationally based, the Court observed that:

> In our opinion, these goals of conservation and concern for the viability of the fishing industry are legitimate. They also are part of the General Assembly's constitutional duty as the guardian of Rhode Island's natural resources. Riley argues that by considering the effects on the present industry and the economic viability of fishermen who already possess licenses, the General Assembly has overstepped its bounds. We disagree. The Assembly has proper concern for the economic viability of the industry as a whole, and in particular, for those individuals who have the most at stake within it.



PDF created with pdfFactory trial version www.pdffactory.com

Id., at 20.

The powers of the General Assembly to regulate fishing are plenary, and since RIMFR 15.14.2 regulates licensing in a manner consistent with the stated purposes of its enabling legislation. Plaintiffs' constitutional challenge to the regulation is meritless.

**3. RIMFR Part 15.14.2's Utilization of Data Derived From Lobster Catch Reports Submitted Does Not Violate R.I. Gen. Laws §20-7-9.**

Plaintiffs assert that it is a violation of R.I. Gen. Laws §20-7-9 for the challenged regulation to predicate applicants' Management Area 2 Lobster Trap Allocation on the basis of data derived from lobster catch reports submitted by those applicants. See Memo. at 12. See also Complaint, Count IV. This contention is unavailing.

R.I. Gen. Laws §20-7-9 provides:

> For the purpose of determining whether the lobsters caught in the waters of this state are increasing or decreasing during any period, every person licensed pursuant to §20-2-24 to catch, take and or sell lobsters in Rhode Island shall, upon request of the department of environmental management, report catch and effort statistics upon forms furnished by the department. The returns from any person shall not be made public, shall be kept only in the files of the department, and shall only be used for statistical purposes.

Contrary to Plaintiffs' claim, the regulatory scheme here does not violate § 20-7-9. For pursuant to the plain statutory language of R.I. Gen. Laws §20-7-9, see State v. Oliveira, 432 A.2d 664, 666 (R.I.1981), it is evident that only the *returns* themselves are not to be made public. What the challenged regulatory scheme provides is the application of the statistical data derived from those reports to calculate the appropriate lobster trap allocation based upon the applicants' own history of activity in the lobster trap fishery; it does not make public the reports. In addition, the employment of the statistical data derived from these reports that were required to be submitted to the State annually by all individuals authorized to harvest lobsters, is an appropriate means for the State to come into compliance with Addendum VII's requirements that States subject to the ASMFC's



PDF created with pdfFactory trial version www.pdffactory.com

effort control plan utilize reliable data in the calculation of lobster trap allocations. See Addendum VII, p. 5, Sec. 4.1.1.4 ("state-issued recall-log catch reports and/or logbooks signed by the permit holder are considered the best available data").

4. **DEM's Adoption Of RIMFR Part 15.14.2 Was Not Beyond Its Statutory Authority Pursuant To R.I. Gen. Laws §20-2.1-9 (4)(ii).**

Plaintiffs submit that RIMFR Part 15.14.2 is *ultra vires* in that it is violative of the requirement set forth in R.I. Gen. Laws §20-2.1-9 (4)(ii) which provides that ". . . retroactive control dates are prohibited and shall not be used or implemented unless expressly required by federal law, regulation or court decision . . ." Mem. at 13. See also Complaint, Count V. Plaintiffs' position turns a blind eye to the fact that the retroactive control dates of 2001-2003 were established by RIMFR Part 15.14.2 in order for the State to come into compliance with Addendum VII to Amendment 3 to the Interstate Fishery Management Plan for American Lobster as adopted by the Atlantic States Marine Fisheries Commission (the "ASMFC"). The ASMFC adopted Addendum VII in an effort to address the problem of overfishing of American Lobsters. In an effort to address this problem, the ASMFC adopted a management plan to reduce the number of traps authorized to be deployed including those deployed in Lobster Management Area 2 which includes Rhode Island coastal waters. The State was, thus, expressly required by Federal Law to adopt a regulations with the 2001-2003 retroactive control date and thereby satisfying the explicit exception to the prohibition set forth in R.I. Gen. Laws §20-2.1-9 (4)(ii).

C. <u>Plaintiffs Have Failed to Demonstrate that Irreparable Harm will Flow from the Denial of the Requested Preliminary Injunction.</u>

As noted above, Plaintiffs have the burden of establishing their entitlement to a preliminary injunction, and as part of this burden must demonstrate irreparable harm. See supra, pp. 3-4. However, they have presented no evidence whatsoever that irreparable injury will flow from the denial of their motion for issuance of a preliminary



PDF created with pdfFactory trial version www.pdffactory.com

injunction. No affidavits have been presented and the Complaint before the Court is not verified. Plaintiffs have not satisfied their burden to demonstrate irreparable harm.

D. **<u>If the Plaintiffs were to be granted the injunction as requested, the hardship which be suffered by Defendants would be more substantial than the hardship to the Plaintiffs if no injunction issues.</u>**

The requested preliminary injunction would cause serious hardship to the State Defendants and the Defendants-Intervenors. The Deputy Chief of DEM's Division of Fish and Wildlife outlines some of the most significant harms for the State. Affidavit of Mark R. Gibson at Paragraph 3. Deputy Chief Gibson calculates if the subject regulation were enjoined, the potential number of lobster traps that could be deployed by Rhode Island State Commercial Fishing License holders and Rhode Island resident Federal Lobster Permit holders in Area 2 could be in the range of 946,400 to 1,050,400 traps as compared to the current total of 129,314 traps. Id. at Paragraph 9. Gibson also calculated if the increase in lobster traps were limited to the eight individually named plaintiffs and merely these individuals reaped the maximum benefits from the voided Rhode Island Marine Fisheries Regulations Part 15.14.2 the increase in trap deployment would amount to Eleven Thousand One Hundred Eight Seventy Nine (11, 879), i.e. 12,800 minus the 921 traps that the individuals are currently authorized. Id. at Paragraph 10.

Gibson explained that, under either scenario, Rhode Island would be held by the ASMFC in non-compliance with the Addendum VII and exposes itself to the imposition of a federal moratorium on the landing of all lobsters in the State of Rhode Island. Id., at Paragraph 11. Imposition of such a moratorium would adversely affect all harvesters of lobsters by any gear type including the plaintiffs in the action at bar.



PDF created with pdfFactory trial version www.pdffactory.com

E. **The public interest would be adversely impacted if the Court were to grant Plaintiffs' motion for injunctive relief.**

Plaintiffs' motion neglects to speak to the potential impact to the public if their motion for preliminary injunction is granted. The adverse impact upon the public interest would be substantial, however. As noted in the affidavit of Toni Kerns, Senior Fisheries Management Plan Coordinator for Management for the ASMFC, the American Lobster has been determined to be overfished by the ASMFC for a number of years. Affidavit of Toni Kerns at Paragraph 9. As result of this determination, the ASMFC adopted a management plan for the reduction of the number of lobsters harvested in Management Area 2 by reducing the number of traps that may be deployed. Id., at Paragraphs 9-18. The sharply increased number of traps that could be deployed if the trap allocation regulation were enjoined would present a serious threat to a valuable species that has already be determined to be overfished.

In sum, because Plaintiffs have failed to demonstrate a likelihood of success on the merits, and because the balance of hardships tips sharply against issuance of a preliminary injunction. Plaintiffs' motion should be denied.

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56(c), summary judgment is warranted "where an examination of the record, viewed in the light most favorable to the non-moving party, reveals no material factual disputes and the moving party is entitled to judgment as a matter of law." General Star Indem. Co. v. Duffy, 191 F.3d 55, 58 (1st Cir. 1999). See also Hartford Ins. Co. v. General Elec. Co. 526 F.Supp.2d 250, *255 (D.R.I. 2007); Wojcik v. Town of North Smithfield, 874 F.Supp. 508, 515 (D.R.I. 1995).



PDF created with pdfFactory trial version www.pdffactory.com

A. **RIMFR Part 15.14.2 is not in violation either of the provisions of the Rhode Island Constitution or the statutory requirements of R.I. Gen. Laws §§20-7-9 or 20-2.1-9 (4) (ii).**

Plaintiffs' Complaint alleges eight counts, each of which asserts that the lobster regulations violate various provisions of the Rhode Island Constitution or state statutes. Plaintiffs invoke several of these alleged violations of law in their motion for a preliminary injunction, and we have addressed their legal merits of these contentions in addressing the "probability of success on the merits" issue in Part I. In particular:

Count I (violation of equal access to the fishery under Art. 1, Sec. 17 of the Rhode Island Constitution), is addressed in section B.1, pp. [5-8], supra;

Count II (violation of equal protection under Art. 1, Sec. 2 of the Rhode Island Constitution), is addressed in section B.2, pp. [8-14], supra;

Count IV (violation of R.I.G.L. § 20-7-9, relating to catch reports) is addressed in Part I, section B.43 p. [17-18], supra.

Count V (violation of R.I.G.L. § 20-2.1-9, relating to retroactive control dates§ 20-7-9), is addressed in Part I, section B.4, p. [18], supra.

Defendants incorporate those arguments by reference. Those arguments also demonstrate why Defendants are entitled to summary judgment as to each of these claims.



PDF created with pdfFactory trial version www.pdffactory.com

We now proceed to address those Counts in the Complaint that were not pressed in Plaintiffs' motion for a preliminary injunction.

**B. No Trap Transferability Regulations Have Yet Been Adopted.**

As demonstrated in Parts I A above, there is no merit to Plaintiffs' claims under Article I, Section 17 of the State Constitution. However, we wish to emphasize that contrary to Plaintiffs' claim at Paragraph 37 of their Complaint, RIMFR Part 15.14.2- Area 2 Lobster Trap Effort Control does not provide a mechanism whereby one may transfer Management Area 2 Lobster Trap Allocations to another unless one were to sell one's entire business. Although RIMFR Part 15.14.2-11 is captioned "Transfers of Area 2 LTAs," and a public hearing has been conducted on the issue of the transferability of less than the entirety of one lobster trap allocation, no regulation has been promulgated to authorize such transfers. Therefore, no challenge to any Rhode Island trap allocation regulation is ripe or appropriate for challenge here. Given that the regulation authorizing transferability of trap allocations is non-existent, no actual case or controversy can be deemed to be presented and, therefore, this Court is deprived of the necessary subject matter jurisdiction to entertain the purported claim. Park v. Rizzo Ford, Inc., 893 A.2d 216 (R.I. 2006).

**C. RIMFR Part 15.14.2 Does Not Violate Article I §16 of the State Constitution**

Plaintiffs allege in Count III of their Complaint that the Rhode Island regulations effect a taking of Plaintiffs' property without just compensation, in violation of Article I, Section 16 of the Rhode Island Constitution. Their claim appears to be that, because Plaintiffs paid fees to renew their fishing licenses in the past, it represents a taking to deny them a license in the future as part of a fishing effort control plan intended to rebuild the lobster stock. Specifically, Plaintiffs claim that the State has "taken Plaintiffs' money for these license renewals and has now taken away the right to use their licenses for the very purpose for which the licenses were issued . . ." Complaint, ¶ 50.



PDF created with pdfFactory trial version www.pdffactory.com

However, plaintiffs fail to make even the threshold showing for any uncompensated taking, namely, a demonstration that they have a cognizable property right. For under Rhode Island law, as under federal law, a fishing license does not create a property right; instead, it is a mere privilege which is subject to the continuing regulatory power of the state. See Am. Pelagic Fishing Co.v. United States, 379 F.3d 1363, 1374 (Fed.Cir.2004) (federal fishing permit does not grant compensable property interest), cert. denied, 545 U.S. 1139 (2005); Alves v. United States, 133 F.3d 1454, 1457 (Fed.Cir.1998) (federal grazing permit does not grant a cognizable property interest for Fifth Amendment purposes); Healey v. Bendick, 628 F.Supp. 681 (D.R.I 1986) (unsuccessful challenge to restrictions imposed by the State of Rhode Island Department of Environmental Management upon the holders of Rhode Island shell fishing licenses). "Furthermore," as the Rhode Island Supreme Court held in Zannelli v. DiSandro 84 R.I.76, 82 (1956) in which the Court upheld the State Commision's denial of an application for a boxing license for health reasons, " a license to engage in a business, occupation, or activity otherwise prohibited by law, is the granting of a privilege; conversely, the denial of such a license is not a deprivation of right, as petitioner here argues."

**D. The Adoption Of RIMFR Part 15.14.2 By The Rhode Island Department of Environmental Management Was Not Violative of R.I. Gen. Laws §42-35-3.**

Count VI of Plaintiffs' Complaint asserts notes that DEM adopted the effort control regulation in violation of R.I. Gen. Laws § 42-35-3(a) of Rhode Island's Administrative Procedures Act (the "APA"). Section 42-35-3(a) provides that :

> Prior to the adoption, amendment, or repeal or any rule the agency shall:
> (1) * * *
> (2) * * *



PDF created with pdfFactory trial version www.pdffactory.com

> (3) Demonstrate the need for the adoption, amendment, or repeal or any rule in the record of the rule making proceeding. The agency shall demonstrate that there is no alternative approach among the alternatives considered during the rulemaking proceeding which would be as effective and less burdensome to affected private persons as another regulation.

Defendants complied with this provision. As the Court has recognized, the purpose of the adoption of the subject regulation was to permit the State to comply with the requirements imposed upon the State, as a member of the ASMFC, to implement Addendum VII. The degree of discretion afforded to the Department was therefore quite limited. The situation reviewed here is not analogous to a scenario wherein the agency is pondering how to first define, and if deemed appropriate, establish a means to address the problem as defined. Rather, the ASMFC had already defined the problem, i.e., the status of the American Lobster in Management Area 2, and having determined the species to be overfished, the ASMFC adopted a plan to address its plight by reducing the number of lobster traps which could legally be deployed in Management Area 2 which includes Rhode Island coastal waters. See Affidavit of Toni Kerns at Paragraphs 9-18. The primary focus of the Department's rulemaking process concerning RIMFR Part 15.14.2- Area 2 Lobster Trap Effort Control was, thus, limited to the adoption of a regulatory mechanism to implement that plan by the interstate authority, the ASMFC.

Despite the limited discretion available to the Department, as noted in the attached Affidavit of Mark R. Gibson, the public was advised of the potential impact upon small businesses including lobster fishers and requested to provide comments to the Department either in writing or orally at public comment hearing concerning "the proposed regulations on how such proposed action can be changed to minimize the impact on those small businesses affected." Affidavit of Mark R. Gibson at Paragraph #5



PDF created with pdfFactory trial version www.pdffactory.com

As recounted by Deputy Chief Gibson in his Affidavit and reflected in Attachments #1 and #2 to his Affidavit, the published notice of public hearing and request for comments which appeared in the Providence Journal included the following language:

> The Department has determined that small businesses may be adversely impacted by the proposed regulations. The public hearing hearings are being conducted to solicit comment on the proposals and to allow public input from small businesses or any cities or town, which may be adversely affected. Small businesses which are currently licensed or in the future may seek permission to harvest, buy, sell, or produce seafood products as well the small businesses that provide services related to those engaged in such industries and small businesses are requested to comment on the proposed regulations on how such proposed action can be changed to minimize the impact on those small businesses affected." Affidavit of Mark R. Gibson at Paragraph #5 ; Attachments #1 and #2.

As noted by Deputy Chief Gibson in his Affidavit, no comments were received during the rulemaking process which either described any alternative rule making proposals by which the Department could comply with the Addendum VII or any suggestions for the State to request approval of the ASMFC of some type of "conservation equivalency" to modify Rhode Island Marine Fisheries Regulations Part 15.14.2 in order to amend the regulation in such a manner that it might satisfy the requirements of Addendum VII to Amendment 3. See Affidavit of Mark R. Gibson at Paragraph #6.[2]

In sum, the DEM promulgated the trap allocation regulation in compliance with the requirements of R.I. Gen. Laws §42-35-3 of the state APA.

**E. DEM's Adoption Of RIMFR Part 15.14.2 Did not Violate R.I. Gen. Laws § 42-35-3.3.**

[2] As is demonstrated in Ms. Kerns' Affidavit, the conservation equivalency determinations sought by New York and Connecticut, referenced by Plaintiffs, related to matters unrelated to trap allocation, and to a different ASMFC Addendum. See Affidavit of Toni M. Kerns ¶ 21.



PDF created with pdfFactory trial version www.pdffactory.com

Count VII of Plaintiffs' Complaint asserts that DEM adopted the challenged regulations in violation of R.I. Gen. Laws §42-35-3.3(a), which provides that "[p]rior to the adoption of any regulation each agency shall . . . consider utilizing regulatory methods that will accomplish the objectives of applicable laws while minimizing impact on small business." Plaintiffs' Complaint at Paragraph 63.

Plaintiffs' allegations have no legal merit As demonstrated above in Part I, the Department promulgated RIMFR Part 15.14.2 to comply with its ASMFC Compact obligations. The ASMFC's own processes were very much designed to take into account, and attempt to minimize, the impact of the effort control plan on small businesses, while at the same time serving important conservation objectives (themselves designed, by preserving the lobster fishery, to ensure that there remains a viable fishery and, with it, a viable lobster fishing industry).

The Rhode Island APA did not require DEM to disregard the requirements of Addendum VII. R.I. Gen. Laws §42-35-3.3(a) provides that;

> To the extent that a proposed regulation is required to be promulgated by a state agency in order to comply with a requirement for the establishment of specific standards under federal law, such regulations or nondiscretionary portions thereof shall not be subject to the requirements of this section.

Nor did the state APA require DEM to conduct further analysis of impacts on small businesses. R.I. Gen. Laws §42-35-3.3(a) provides, in part, that "[p]rior to the adoption of any regulation each agency shall notify the governor's office and the economic development corporation of its intent to adopt the proposed regulation." The Section goes on to *permit* the governor's office and the economic development corporation *if deemed appropriate* to require the rulemaking agency to undertake certain



PDF created with pdfFactory trial version www.pdffactory.com

additional analysis, including the possible minimization of adverse impact of the proposed regulatory action on small business. R.I. Gen. Laws §42-35-3.3(a) DEM having received no such notice with respect to the trap allocation regulation, , it was under therefore no obligation to conduct the analysis suggested by the Plaintiffs relative to the subject regulation's impact on small business. Id.

**F. Plaintiffs' challenge that RIMFR Part 15.14.2 is beyond the Director's Powers under R.I.G.L. § 20-2.1-9 is premature.**

In Count VIII of their Complaint, plaintiffs claim that DEM lacks statutory authority to adopt regulations concerning the transfer of lobster trap authorizations. Citing R.I.G.L. § 20-2.1-9, plaintiffs claim that there is "nothing within the enabling legislation" (Complaint, ¶ 67) that allows DEM to enact a trap transferability regime.

This claim fails for, as just observed, the Department has not adopted final regulations providing for transferability of lobster trap authorizations. Therefore, any judicial challenge is premature. Indeed, Plaintiffs' complaint acknowledges as much, referring merely to the Director's "intention" to provide for trap transferability. (Complaint, ¶ 69)

**Conclusion**

Defendants respectfully request that that Plaintiffs' Motion For Declaratory Judgment and Motion For Preliminary Injunction be denied and that Defendants' Motion for Summary Judgment be granted.



PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,

RI Department of Environmental Management
By its Attorneys,

/s/ Terence J. Tierney
Terence J. Tierney, Bar No. 2583
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2307
Fax: (401) 222-3016

/s/ Gary Powers
Gary Powers, Bar No. 2321
Deputy Chief Legal Counsel
Office of Legal Services
R.I. Dept. of Environmental Management
235 Promenade Street
Providence, RI 02908
Tel: (401) 222-4700 ext 2308
Fax: (401) 222-3378

/s/ Sean H. Donahue
Sean Donahue, Esquire
2000 L. Street, NW Suite 808
Washington, DC 20036

/s/ Mark A. McSally
Mark A. McSally, Esquire
Kelly, Kelleher, Reilly & Simpson
146 Westminster Street, Suite 500
Providence, RI 02903

## CERTIFICATION

I, the undersigned, hereby certify that the within document was served by electronic means (ECF) on this 22nd day of February,.2008 to the following:

Robert Caron, Esquire
55 Bradford Street, Suite 203
Providence, RI 02903
RCaron@caronolenlaw.necoxmail.com

/s/ Terence J. Tierney



PDF created with pdfFactory trial version www.pdffactory.com

PDF created with pdfFactory trial version www.pdffactory.com