**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **RHODE ISLAND FISHERMEN'S ALLIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually,** ***Plaintiffs*** | : | |
| **v.** | : | **C.A. NO. 1:07 – cv - 230** |
| **THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT And W. MICHAEL SULLIVAN, PH.D. In his capacity as the Director of the Rhode Island Department of Environmental Management, et al.** ***Defendants*** | : | |

**AFFIDAVIT OF TONI M. KERNS**

1. I am the Senior Fisheries Management Plan Coordinator for Management for the Atlantic States Marine Fisheries Commission (ASMFC or Commission), and have been on the ASMFC staff since 2003. I have been Coordinator of the Commission's Interstate Fishery Management Plan for American Lobster (FMP or "Lobster Management Plan") since 2005.

2. The Commission's resource management planning for American Lobster is conducted by the ASMFC's American Lobster Management Board ("Lobster Board"). The Lobster Board is composed of representatives of ASMFC member states that are interested in the lobster fishery – *i.e.*, all the coastal states from Maine to North Carolina. The Commission has delegated authority to the Board to oversee management of the lobster fishery and to develop management measures to protect the lobster resource.

3. The American Lobster fishery in the United States is an interstate fishery. American lobster are found in coastal waters of the Atlantic States from Maine to

North Carolina, as well as in federal waters. Responsibility for managing this interjurisdictional resource is shared between the coastal states, acting through the Commission pursuant to the Atlantic States Marine Fisheries Commission Compact and the Atlantic Coastal Fisheries Cooperative Management Act (ACFCMA), and the federal government, acting through the Department of Commerce's National Oceanic and Atmospheric Administration ("NOAA Fisheries"), under various federal statutes including the Magnuson-Stevens Act and ACFCMA.

4. The AMSFC conducts its fishery management planning for the American lobster fishery in state coastal waters in close cooperation with the principal federal fishery management agency – NOAA Fisheries – that is responsible for managing the lobster fishery in federal waters. The federal regulators and the ASMFC cooperate in various ways in the management of the fishery, including in the development of scientific data about the stock status and in the formulation of policy. Representatives of the Federal government sit in an advisory capacity on the Lobster Board and provide technical and scientific assistance to the Commission.

5. The basic guidelines for current lobster management are set forth in Amendment 3 to the Lobster Plan, which was approved by the Commission in 1997 and is attached as Exhibit A to this Affidavit. Article 3 states that the purpose of the ASMFC's lobster management is to "to have a healthy American lobster resource and a management regime which provides for sustained harvest, maintains appropriate opportunities for participation, and provides for cooperative development of conservation measures by all stakeholders." Amendment 3 to the Interstate Fishery Management Plan for American Lobster, Executive Summary, ii. The Amendment estsablishes a set of objectives for lobster management, including to

> 1) Protect, increase or maintain, as appropriate, the brood stock abundance at levels which would minimize risk of stock depletion and recruitment failure.
> 2) Develop flexible regional programs to control fishing effort and regulate fishing mortality rates;
> 3) Implement uniform collection, analysis, and dissemination of biological and economic information; improve understanding of the economics of harvest;
> 4) Maintain existing social and cultural features of the industry wherever possible;
> 5) Promote economic efficiency in harvesting and use of the resource;
> 6) Minimize lobster injury and discard mortality associated with fishing;

7) Increase understanding of biology of American lobster, improve data, improve stock assessment models; improve cooperation between fishermen and scientists;
8) Evaluate contributions of current management measures in achieving objectives of the lobster FMP;
9) Ensure that changes in geographic exploitation patterns do not undermine success of ASMFC management program;
10) Optimize yield from the fishery while maintaining harvest at a sustainable level.
11) Maintain stewardship relationship between fishermen and the resource

6. Like the Commission's other fishery management plans, the Lobster FMP has been periodically reviewed and updated in response to new information regarding changing conditions in the fishery or improved understanding of current conditions. Amendment 3 to the Plan, which was approved by the full Commission, provides for an adaptive management process whereby management measures and plan requirements may be adjusted in response to new information. These adjustments are effected by addenda to Amendment 3. The Lobster Board, exercising authority delegated by the Commission, approves addenda to the plan. Section 3.6 of Amendment 3 provides:

> The Board may vary the requirements specified in this Amendment as a part of adaptive management in order to conserve the lobster resource. Specifically, the Board may change target egg production goals (section 2.5), the overfishing definition (section 2.4), management measures under sections 3.2 and 3.3, monitoring and reporting (section 4) and recommendations for actions in federal waters (section 3.8). Such changes will be instituted to be effective on the first fishing day of the following year, but may be put in place at an alternative time when deemed necessary by the Board.

A State that wished to challenge the provisions of an addendum could challenge the Board's action through the ASMFC's appeals process. The provisions of Addenda are regarded as integral parts of the Lobster Plan itself, and carry the same effect.

7. Amendment 3 establishes seven lobster management areas for the American Lobster fishery. Lobster Conservation Management Area 2, at issue in this case, includes federal waters and state waters (within three miles of shore) of Massachusetts and Rhode Island (Connecticut and New York are also subject to Area 2 because some of their residents have licenses to fish in Area 2 waters). Most of Area 2 waters (by area) are subject to federal jurisdiction (all waters more than three miles offshore). The Southern New England Lobster stock, which includes the Area 2 waters, straddles other management areas (both federal and state waters).

8. Amendment 3 creates American Lobster Conservation Management Teams (LCMT's), for each of the seven management areas. LCMTs are composed of industry representatives appointed by the States, State fishery managers, representatives from NOAA-Fisheries, and representatives from the ASMFC American Lobster Technical Committee. LCMTs are appointed by the Board to advise it and recommend changes to the program for each specific area to fulfill the goals of the Plan while taking into account local fishing practices.

9. In recent years the Lobster Board has adopted a series of management measures to address serious and well documented problems in the Southern New England lobster stock, including Area 2. A report by the Technical Committee (TC) in late 2002 revealed declining landings and survey indices, indicating a need for new management measures. Among other things, the TC concluded that there was a need to begin rebuilding spawning stock biomass as soon as possible by reducing fishing mortality, reducing fishing effort; and developing new biological reference points to respond to varying stock conditions. In 2003, the Board responded to TC's report by approving an emergency action that sped the implementation of gauge size increases, which establish the minimum size requirements for lobsters that may be kept by fishermen. The Board also indicated that other management measures should be developed to reduce the fishing mortality rate in Area 2 in 2004 to a level that will allow for stock rebuilding.

10. Beginning in December 2004, the Lobster Conservation Management Team (LCMT) for Area 2 held meetings – attended by State and federal fisheries managers and industry representatives -- concerning a new effort control plan. White Memo at 5-6. In early 2005, the LCMT held a series of public meetings with lobstermen's groups in Providence, Rhode Island, and Fall River, Massachusetts.

11. In February 2005, the Board approved Addendum VI to Amendment 3. Addendum VI called for the development of a new effort control program covering all jurisdictions with Area 2 permit holders, on that would cap fishing effort "at or near current levels with the potential to adjust the levels based upon the outcome of the upcoming stock assessment.'" See Mem. from Pat White, ASMFC Lobster Board Chair at 5 (July 25, 2005) ("White Memo") (Document C in Appendix the Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance) (filed Aug. 31, 2007).

12. In April 2005, the LCMT submitted to the Board a set of proposed management measures. A central feature of the proposals was an effort control program that would limit the allocation of traps based upon lobstermen's fishing history, for the purpose of limiting catch and thereby creating the conditions for the fishery to rebuild. A central policy question for the Board was the choice of a baseline period to establish the relevant fishing history. The LCMT proposed the use of a 2001-2003 qualifying period for trap allocations, with allocations based solely

upon the maximum value of landings during that period. White Memo at 8-9. The LCMT stated that "[a] key issue that the Board must resolve" was the "choice of performance years: "should it be a five year period, 1999-2003, * * * or a shorter period?" White Memo at 10. The LCMT explained that the choice of a short, recent period would "capture recent attrition" in the lobster fishery – with effort in 2003 being far below that for 1999 -- and thereby achieve the conservation objective of reducing lobster effort and catch. *Id.* However, basing the reference history on a single recent year could have "disparate impacts on some fishermen with poor performance in the most recent year"; at the other extreme, using "extended periods (up to five years) would accommodate nearly all fishermen who fished at any time during the period," fail to "capture the fishery's recent attrition," and could return effort to "historic levels" contrary to conservation goals. *Id.*

13. Based on input from the LCMT, the Board in August 2005 published a draft Addendum containing proposals for a new effort control plan. Draft Addendum VII (Document D, Appendix to the Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance) set forth, for public comment and Board consideration, alternative methods for States to allocate traps to their commercial lobster fishermen. See *id.* at 6-7. The options were: (A) "highest value of Effective Traps Fished during <u>2001</u>-2003," (B) "highest value of Effective Traps Fished, during <u>1999-2003</u>," (C) "highest value of predicted traps fished over three years, 200<u>1-2003, based solely on the relationship</u> b<u>etween pounds reported and maximum traps fished</u>," and (D) "highest value of predicted traps fished over five years, <u>1999-20</u>03, ba<u>sed solely on the relationship between</u> pounds <u>reported and maximum traps fished</u>." *Id.* (emphases original). "Effective traps fished" refers to the lower of (1) the maximum number of traps reported fished for a year, and (2) the number of traps predicted, using a prescribed regression analysis, to catch the poundage of lobster reported by the lobsterman. *Id.* at 6, 12 (Figure 3), 15 (Table 2).

14. The Board used fishing effort in 2003 – a year reflecting recent attrition in the lobster fishery -- as the target level of effort consistent with the Plan's conservation objectives. Option A – with its shorter, three-year performance period and conservative "Effective Traps Fished" test was predicted to result in effort exceeding the target level by 23%. Doc. D at 6. By contrast, Option B was expected to result in allocations exceeding target levels by 61%; Option C by 47%; and Option D by about 87%. Doc. D at 6-7.

15. Consistent with the Commission's public participation requirements, the Board convened public hearings concerning the proposed new management measures in Addendum VII in Rhode Island, Massachusetts, Connecticut, and New York. The Board also solicited and received written public comment via email, mail, and/or fax.

16. At its meeting on October 31, 2005, the Board considered Draft Addendum VII and the public comments. After deliberation and additional public input, the Board voted to approve Option A, including the 2001-2003 reference period for

trap allocations. See Doc. E at pp. 48, 57, in Appendix to Supplemental Memorandum of Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance. Thus, as approved, Addendum VII (Document B, Appendix to the Supplemental Memorandum of the Atlantic States Marine Fisheries Commission on Addendum VII Adoption and Compliance) requires that States with resident fishermen permitted to fish in Area 2 allocate traps based upon the highest value of Effective Traps Fished during 2001-2003. Doc. B at p. 6. Any further reductions in traps necessary to achieve the Area 2-wide Trap Allocation Cap, or to achieve necessary based upon later stock assessments, would be accomplished through percentage reduction of allocations. *Id.* at 6-7.

17. The effort control program based upon fishing history, and the choice of the 2001-2003 reference period, were central issues during the Board's development of Addendum VII and were actively debated. Addendum VII also addresses other important matters, including provisions concerning individuals who were unable to fish during the reference period due to medical hardship or military service, and new provisions that will allow for transferability of trap allocations.

18. Both Draft Addendum VII and the Final Addendum VII discuss the effort control plan under a heading called "Optional Elements." That heading refers to the fact that the Board itself had to choose between several different options for how to set the trap allocation; it does not mean that the trap allocation provisions are optional for member states. All participants, to my knowledge, understood that the effort control provisions, including the reference period, would be a required element of the plan as adjusted under Addendum VII, and to my knowledge no member State has ever claimed that the use of the stated reference period is optional.

19. The states with active Area 2 fishermen have all taken action to implement Addendum VII. Rhode Island promulgated its regulations to bring the State "into compliance with Addendum VII * * *, as adopted by the [ASMFC] in November 2005. The purpose of the program is to help achieve a healthy and sustainable lobster resource in Area 2 by capping effort at 2001-2003 levels, and establishing a mechanism for future adjustments in response to changes in resource status." RI Marine Fisheries Reg. 15.14.2-1 (2007). To be eligible for a Lobster Trap Allocation, an applicant must have (a) (i) held a DEM-issued commercial lobster license, or a federal lobster permit endorsed for Area 2, at some point during 2001-2003; (ii) documented actual lobster landings during 2001-2003 (unless unable due to material incapacitation as defined in the regulations); and (iii) renewed his permit annually since 2003; or (b) lawfully acquired a federal lobster permit that meets the subsection (a) requirements or acquired the vessel and gear of a Rhode Island license holder who meets the specified qualifications. Reg. 15.14.2-6. Fishing performance is based on logbook reports or federal Vessel Trip Reports; the DEM will consider other information if previously provided to a government agency. Reg. 15.14.2-6(c).

20. The other states with Area 2 license holders – Massachusetts, Connecticut and New York – have also taken action to conform to Addendum VII. Massachusetts has promulgated regulations implementing the Addendum's requirements (MA

DMF regulations section 322 CMR 6.13 and 7.03). New York and Connecticut have only a handful of fisherman requesting an allocation. Connecticut allocated traps to a total of four such fishermen and, the appeal period having closed, no additional allocations will be made (CT DEP regulation section: 26-157c-4(a-l)). New York requested that Area 2 vessels indicate interest in receiving traps and three fishermen have requested an Area 2 allocation. New York will allocate traps in accordance to the rules set by Addendum VII. All other regulations required under Addendum VII have been adopted by New York (NY DEC regulation section 44.4(b (1)). New Jersey officials have informed ASMFC staff that seven New Jersey residents have federal permits authorizing them to fish for lobster in the federal portions of Area 2; the federal government will be responsible for trap allocations for these federal permittees.

21. No State has sought to be excused – on conservation equivalency or other grounds -- from their commitment to implement Addendum VII. The states of New York and Connecticut have recently proposed a conservation equivalency proposal for the Area 6 minimum gauge size requirements set forth in Addendum XI to the Lobster Plan. The states would be implementing a v-notch program that notches a specific number of lobsters to be protected from harvest as an alternative to the effect of protecting lobsters by a gauge increase. The Board approved this conservation equivalent plan at the August 2007 Board meeting. If the state does not v-notch the required amount of lobsters, the gauge increase will go into effect. Area 6 falls completely within state waters and therefore no other agency besides New York and Connecticut must implement lobster regulations.

22. Area 2 includes both federal and state waters, and effort control rules established by any jurisdiction in Area 2 will have impacts for fishing and for the lobster resource elsewhere in Area 2. Throughout the proceedings leading to adoption of Addendum VII, and in subsequent consultations regarding rules for trap allocations and transferability of trap allocations, both NOAA Fisheries and the Commission have emphasized the importance of uniform rules concerning trap allocations and transferability of trap allocations to the effective operation of this interstate management program. Criteria must be set up to establish consistent fishing histories, especially where allocations and trap transferability is allowed. Different regulatory strategies to allocations may undermine overall management based on trap allocations. The problem is acute for dual (federal and state) permit holders with a single fishing history. Specifically, NOAA-Fisheries has one set of lobster regulations that apply equally to permit holders regardless of state citizenship. It is expected that NOAA's regulations will mirror the standards in Addendum VII. Accordingly, it is exceedingly difficult for NOAA-Fisheries to create one set of uniform federal regulations that match all of the States' regulations when those state regulations are inconsistent. The end result of inconsistent state allocation rules would be that federal regulations would differ from at least some of the states' regulations, which would result in at least some dual permit holders receiving different allocations based on the same fishing history. These differing allocations will create confusion and be difficult (and presently impossible) to track as they are transferred. It is also unclear whether

differing jurisdictions would honor decisions made other jurisdictions applying different standards.

23. Recent reviews of the American Lobster Southern New England lobster stock status, which includes Area 2, indicate a continuing need for stock rebuilding and for management measures that will allow the stock to recover. Recent analyses indicates low levels of lobster abundance, indicating continued need for management measures to rebuild the resources, such as controlling fishing effort, in Area 2.

24. The trap allocation methodology set forth in Addendum VII was selected and approved after a lengthy public process as the best means to achieve conservation objectives while also preserving economic opportunities for those recently active in the fishery. The Board determined the measures adopted in Addendum VII are necessary to control fishing effort so as to make possible the rebuilding and conservation of the American lobster fishery in Southern New England. An order enjoining enforcement of the Rhode Island regulations implementing Addendum VII would be likely to increase the chances of further harm to the fishery by allowing unregulated fishing; cause great administrative difficulty for the Commission and the member states; and pose problems of inconsistency and inequity among the multiple jurisdictions charged with protecting the American lobster fishery.

I solemnly swear, under pains of perjury, that the foregoing is true and correct.

Toni M. Kerns

February 20, 2008

DISTRICT OF COLUMBIA: SS
Subscribed and Sworn to before me, in my presence,
this 20th Day of February, 2008.

Keisha Monroe Notary Public, D.C.
My Commission Expires 5/14/2009