**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| RHODE ISLAND FISHERMEN'S ALLIIANCE, INC., by and through its President, RICHARD FUKA, STEVEN RILEY, individually, BRIAN LOFTES, individually, STEPHEN MEDERIOS, individually, GREG DUCKWORTH, individually, VINCENT CARVALHO, individually, PETER DIBIASE, ESQ., individually, ROBERT MORRIS, individually, and ANDREW CAVANAGH, individually, Plaintiffs | : | |
| v. | : | C.A. NO. 1:07-cv-230 |
| THE DEPARTMENT OF ENVIRONMENTAL MANAGEMENT And W. MICHAEL SULLIVAN, PH.D. In his capacity as the Director of the Rhode Island Department of Environmental Management Defendants | : | |

**DEFENDANTS' MEMORANDUM IN REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DECLARATORY JUDGMENT AND MOTION FOR PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants State of Rhode Island Department of Environmental Management (DEM) and W. Michael Sullivan, and Defendants-Intervenors Atlantic States Marine Fisheries Commission (ASMFC) and the Rhode Island Lobstermen Association (collectively, "Defendants") respectfully submit this Memorandum in Support of their Reply to Plaintiffs' Response To Defendants' Objection To Plaintiffs' Motion for Declaratory Judgment and Motion For Preliminary Injunction and in support of Defendants' Motion For Summary Judgment. Although the Plaintiffs reiterate certain arguments arising pursuant to the laws of the State of Rhode Island

in their response, the Defendants believe their previously filed Memorandum of Law In Support of Defendants' Opposition To Plaintiffs' Motion For Declaratory Judgment and Motion For Preliminary Injunction and in Support of Defendants' Motion For Summary Judgment adequately addressed these state issues. Therefore, the instant Reply Memorandum shall focus upon the state's obligation to comply with Addendum VII.

## I. PLAINTIFFS' CHALLENGES RAISE ISSUES OF LAW

Plaintiffs assert that a "significant genuine material factual issue" remains "to be determined by this Court," namely, "whether Rhode Island was mandated or not to adopt the regulation." Mem. of Law in Response and Objection to Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Declaratory Judgment and Motion for Preliminary Injunction * * *" at 14 (filed April 10, 2008) (hereinafter Pltf. Mem.). But contrary to their characterization, "[w]hether Rhode Island was mandated to adopt the regulations recommended by Addendum VII" is ***not*** a "factual question[]." ***Id.*** at 3.

The nature and extent of Rhode Island's obligations under the ASMFC compact, and the legal effect of Addendum VII are quintessential questions of law. See ***Petty v. Tennessee-Missouri Bridge Comm.***, 359 U.S. 275, 279 (1959) (interpreting compact a matter of law). ***United States v. Jones,*** 10 F.3d 901, 904 (1st Cir.1993) (observing that "[s]tatutory interpretation is a question of law"); ***Kent v. Principi,*** 389 F.3d 1380, 1384 (Fed. Cir. 2004) ("[I]nterpretation of a statute or regulation is a question of law ...."). See also ***Texas v. New Mexico,*** 462 U.S. 554, 567-68 (1983); ***Kansas v. Colorado***, Orig. No. 105, 1994 WL 16189353, *155 (1994) (Special Master's Report of Littlefield, J.) (noting that interpretation of "statutory and administrative action" relating to compact "presents questions of law, to be decided by the Court").

To be sure, there are factual disputes between the parties as to whether the challenged regulations are causing plaintiffs irreparable harm, and whether an injunction barring their enforcement would cause serious disruption for Defendants, Defendants-intervenors, third parties, and harm to the public interest. But any disputes concerning the balance of harms should be resolved, and any evidentiary hearing held, if and only if the court concludes that Plaintiffs have established at least probable violations of law by the Defendants. *New Comm Wireless Servs., Inc. v. SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002) (noting that if moving party cannot establish likelihood of success on merits, other factors in preliminary injunction test become "matters of idle curiosity").

## II. THE CHALLENGED PROVISIONS OF ADDENDUM VII WERE MANDATORY

Plaintiffs' central argument is that the Rhode Island Defendants cannot rely upon Addendum VII as the legal basis for the challenged regulations because the State was not obligated to implement the requirements of the Addendum. See, *e.g.*, Pltfs' Mem. p. 3, 10, 15-16. Plaintiffs are incorrect.

### A. Compact Undertakings and ACFCMA Require States to Implement Plan Provisions

In its Supplemental Memorandum filed on August 31, 2007, Defendant-Intervenor ASMFC addressed the sources of ASMFC member states' obligations to implement fishery management plan provisions such as those set out in Addendum VII. ASMFC Supp. Mem. at 5-8. As explained there, the ASMFC Compact states have agreed to implement and enforce the provisions of Commission fishery management plans.

The ASMFC Interstate Fishery Management Program Charter is explicit on this point. It provides that "all states are responsible for the full and effective implementation and enforcement of fishery management plans within areas subject to their jurisdiction." Charter, §

7(a) (Appendix to ASMFC Supp. Memo, Document F). States are obligated to report to the Commission demonstrating that they have faithfully implemented the relevant plan provisions. *Id.* The ASMFC maintains the authority to "determine that a state is not fully and effectively implementing and enforcing the required provisions of a fishery management plan," in which case a determination of noncompliance is forwarded to federal and state fishery management agencies. *Id.*

While the Commission lacks coercive power over member States, the member States have committed to adhere to the provisions of fishery management plans in order to enhance the health and protect the value of shared coastal fisheries. States secure real resource management benefits from the cooperative interstate program the Compact facilitates; and the program simply would not work unless the plan provisions the Commission develops were required to be implemented by member States.

In the Atlantic Coastal Fisheries Cooperative Management Act (ACFCMA), 16 U.S.C. §§ 5101 *et seq*., Congress has recognized the critical role that ASMFC plans play in interstate fisheries management and provided federal mechanism in cases of noncompliance with those plans. ACFCMA expressly recites ASMFC member states' obligations to comply with fishery management plans, *id*. § 5104(c), and requires the Commission to monitor such compliance "for the purpose of determining whether such State is effectively implementing and enforcing such plan," *id.* Under ACFCMA, a state's noncompliance with the provisions of an ASFMC plan can lead to a moratorium on fishing in state waters and to direct federal regulation by the U.S. Department of Commerce. *See id*. § 5106; *Medeiros v. Sullivan*, 327 F. Supp. 2d 145 (D.R.I. 2004), *aff'd* 431 F.3d 25 (1st Cir. 2005), cert. denied. 549 U.S. 904 (2006). This Court's ruling

on Plaintiffs' motion to remand describes the Compact/ACFCMA framework. See Memorandum & Order at 2-5 (filed Nov. 5, 2007).

The universally understood premise of the member states' elaborate decision-making process for fishery plans and changes thereto, see ASMFC Supplemental Memo at 1-5 (describing process for adoption of Addendum VII); Affidavit of Toni M. Kerns at ¶¶ 10-20, is that the plans, once adopted, will be implemented by the states to which they apply. Both the ASMFC Charter and ACFCMA illustrate and reinforce that premise.

The trap allocation methodology adopted in Addendum VII is an important component of a fishery management plan for lobster; reliance on fishing history for 2001-2003 was the central mechanism selected by the Board, after long deliberation, to control fishing effort throughout LCMA 2. Rhode Island, as an ASMFC State with waters in Area 2, was responsible for the "full and effective implementation and enforcement" (Charter, § 7(a)) of the plan. Therefore, the State defendants have correctly argued that the regulations to implement the plan result from Rhode Island's obligations as a member of the ASMFC Compact.

**B. The "Conservation Equivalency" Provisions of Amendment 3 Do Not Support Plaintiffs' Arguments**

The often-repeated centerpiece of plaintiffs' argument that Rhode Island was not obligated to implement Addendum VII turns upon conservation equivalency, a mechanism provided for in Amendment 3 that allows States to propose - subject to Commission approval - alternative means of complying with those plans. See Ptlf. Mem. at 3, 13-20, 21.

Under Amendment 3 of the Lobster Plan - as numerous other ASMFC plans - states may submit proposed alternative management measures for Management Board approval. See

Amendment 3, Section 3.5 (Exhibit H to ASMFC Supp. Memo); ASMFC Supp. Memo at 6 n. 7 (discussing conservation equivalency).[1]

Such proposals are forwarded to the ASMFC's Lobster Technical Committee, which evaluates the proposals and provides recommendations to the Board. Amendment 3, Section 3.5.1. The Board may approve a conservation equivalence proposal if it finds the proposal consistent with (1) governing fishing mortality target, and (2) "the goals and objectives" of Amendment 3. *Id.* Those goals and objectives - which include a variety of conservation, economic, social, and administrative aims - are set forth in Amendment 3, Sections 2.1 and 2.2. *See also* Affidavit of Toni M. Kerns, ¶ 5.

Plaintiffs' primary argument is that the possibility of obtaining leave from the ASMFC to adopt "conservation equivalent" management measures as an alternative to the measures

---

[1] Section 3.5 of Amendment 3, "Alternative Management Regimes," provides:

> Once approved by the Lobster Management Board, a state may not change its regulatory program except with the approval of the Board except that more restrictive measures can be implemented by states without Board approval. A state can request a change only if that state can show to the Board's satisfaction that the target egg production will be achieved. Changes to state plans must submitted in writing to the Board and to the ASMFC.
>
> *3.5.1 Procedures*. A state may submit a proposal for a change to its regulatory program or any mandatory compliance measure under this amendment to the Commission, including a proposal for *De Minimis* status. Such changes shall be submitted to the chair of the Plan Review Team, who shall distribute the proposal to the Board, the Plan Review Team, the Technical Committee, the Stock Assessment Committee and the Advisory Panel. The Plan Review Team is responsible for gathering the comments of the Technical Committee, the Stock Assessment Committee and the Advisory Panel, and presenting these comments as soon as possible to the Board for decision. The Board will decide whether to approve the state proposal for an alternative management program if it determines that it is consistent with the fishing mortality rate then applicable, and the goals and objectives of this amendment.
>
> *3.5.2 Management Program Equivalency.* The Lobster Technical Committee will review any alternative state proposals under this section and provide to the Board its evaluation of the adequacy of such proposals.

required by an ASMFC plan means that the terms of Addendum VII here were not mandatory. See, *e.g.*, Mem. 3, 15-16, 21.[2] This argument fails for several reasons.

1. *Article III Standing.* Plaintiffs' reliance on the possibility that Rhode Island could have submitted proposed conservation equivalency measures to the ASMFC - and thereby avoided alleged violations of Rhode Island law associated with implementing Addendum VII's terms - suffers from a threshold jurisdictional defect.

The ASMFC has discretion to approve or not to approve conservation equivalency proposals, based upon its policy judgment as to whether the proposed alternative measures will achieve the fishing mortality threshold and whether it will achieve the plural and overlapping "goals and objectives" of Amendment 3. See Amendment § 3.5.1. It is entirely speculative whether, assuming Rhode Island were to submit a conservation-equivalency plan, such proposal would afford Plaintiffs any redress. That speculation is especially severe here, where Plaintiffs have never identified the content of the hypothetical alternative plan that is the linchpin of their entire argument that Rhode Island need not have implemented Addendum VII as promulgated.

Because plaintiffs' claims depend upon the exercise of policy discretion by an independent actor - the ASMFC - against whom Plaintiffs have asserted no claims, ruling on a

[2] In places, Plaintiffs seem to turn their conservation equivalency argument into a direct attack on the wisdom or lawfulness of Addendum VII. See Pltf. Mem. at 19 (arguing that control dates in Addendum VII were not "pivotal"); id. at 20-21 (arguing that "'the adoption and acceptance of Addendum VII has unfortunately and artificially created economic winners and losers'") (quoting Pope. Aff. ¶ 16); id. at 25 (questioning whether Addendum VII will have "conservation benefit"). That attack is misplaced, because Plaintiffs have asserted no claim that Addendum VII was unlawful or unsupported, and they have asserted no claims against the ASMFC. (Even when properly challenged, of course, agency judgments about the scientific soundness, feasibility, and administrability of alternative conservation measures are entitled to broad deference. *See Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 109-111 (1st Cir. 1997)).

hypothetical conservation equivalency proposal they have never identified, Plaintiffs cannot satisfy the standing requirements of Article III of the Constitution.

Article III requires, as an "irreducible constitutional minimum," that a claimant demonstrate not only an injury in fact, but also that the injury is "'fairly * * * trace[able] to the challenged action of the defendant, and not * * * th[e] result [of] the independent action of some third party not before the court,'" and that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 41-43 (1976)). The Court has declined standing when the plaintiffs' possibility of redress depends upon the exercise of discretion by an independent actor. See *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006) (taxpayers lacked standing to challenge tax exemptions where claimed injury depended on assumptions about state officials' exercise of "policy judgment" concerning use of tax revenues); *Simon*, 426 U.S. at 444-45.

Even if Rhode Island had proposed an alternative management measure, Plaintiffs' alleged injury would remain unredressed unless the proposal was approved by the ASMFC. Plaintiffs have supplied no reason to believe the Commission would have granted such a proposal. They have failed even to outline the terms of a proposal, nor addressed why, in their view, an alternative management proposal would satisfy the requirements of Amendment 3. Moreover, Plaintiffs have not brought any claims against the ASMFC, nor pointed to any principle of law that would *require* the Commission to approve a proposed conservation equivalency measure.

As noted, the trap allocation provisions of Addendum VII that Plaintiffs attack were carefully considered and closely debated. See ASMFC Supp. Memo 1-5. Proposals to use a

reference period other than 2001-2003 reference period was selected after other periods were determined to be insufficiently protective. Any measure that adjusted the reference period would have been problematic. And any measure that led to disuniformity between the fishing histories used in the Rhode Island portion of Area 2 waters and the other jurisdictions within Area 2 -- would likely have faced objections as well, given that uniformity of fishing histories for “dual” licensees was already an issue. See Supp. Memo. 9-10.

In this light, plaintiffs lack Article III standing to press a claim founded upon failure to pursue a conservation equivalency measure because they cannot demonstrate a reasonable likelihood that such a measure, if devised and submitted, would have been approved by the Commission - a predicate for redressing Plaintiffs’ claimed injuries.

2. *The Possibility of Obtaining Approval for Alternative Management Proposals Does not Render ASMFC Plans Optional*. Even if Plaintiffs had Article III standing to assert challenges based upon Rhode Island’s failure to propose alternative management measures under Amendment 3’s conservation equivalency provisions, their argument would fail. Plaintiffs’ argument that the mere possibility of obtaining approval of alternative measures somehow undoes the obligatory nature of Addendum VII - or frees member states from having to comply - disregards the legal framework supporting ASMFC management plans.

As the text of Amendment 3 makes clear, *see* § 3.5.1, conservation equivalency is a discretionary device under which the ASMFC may authorize alternative management measures that have equivalent conservation benefits and to satisfy the goals and objectives of Article 3. It is not intended as a means to exempt States from provisions of management plans that are alleged to be inconsistent with state statutes or regulations. It does not alter member states’

commitments to implement duly issued ASMFC plans. Cf. Memorandum & Order at 3 (discussing Rhode Island's membership in Compact and citing R.I.G.L. § 20-8-7).

A proposed alternative measure that does not satisfy the requirements of conservation equivalency and consistency with the goals and objectives of Amendment 3 may not be approved by the Management Board regardless of any claims that the ASMFC plan as promulgated is inconsistent with state law or policy. The remedies under ACFCMA apply without regard to whether the ASMFC plan is claimed to be inconsistent with state law or policy. Management Plans approved by the relevant Board must be implemented - subject to the ACFCMA provisions for noncompliance - unless the State pursues the extraordinary route of proposing concrete alternative management measures ***and*** secures ASMFC approval.

3. *No Alternative Management Proposals Have Been Identified or Advanced.* Plaintiffs' discussion of alternative, conservation-equivalent measures here is wholly speculative. Neither they, nor any other party, in fact advanced any concrete proposal that Rhode Island allegedly should have been submitted to the ASMFC. Even in this Court, plaintiffs do not identify what specific management regime that Defendant DEM should have devised as a proposed alternative to Addendum VII's provisions for limiting trap allocations.

Plaintiffs' failure to identify an alternative management regime that DEM allegedly was obligated to propose to the Commission provides an additional, independent basis for rejecting their claims. Under basic principles of administrative law, parties cannot fault an agency for failing to adopt a policy the party did not put before the agency. "It is well settled that a plaintiff aggrieved by a state agency's action first must exhaust administrative remedies before bringing a

claim in court." *Rhode Island Employment Security Alliance v. State,* 788 A.2d 465, 467 (R.I. 2002).[3]

Plaintiffs obliquely suggest that in fact they ***did*** advance conservation equivalency proposals. See Mem. at 10 ("conservation equivalency measures were suggested and submitted to the Director of DEM"); Mem. at 21 (". . . PROPOSALS FOR CONSERVATION EQUIVALENCY WERE MADE") (heading).

However, these claims fail to live up to their billing. Plaintiffs fail to point to any conservation equivalency proposal related to the trap-allocation rules of Addendum VII of which they complain. Instead, they cite concerns expressed before the ASMFC *in 2003* opposing transferability and tag allocation provisions under consideration for a separate, prior addendum, see Mem. 22, and a letter sent by plaintiff Gerald Carvalho to the Commission generally criticizing proposed Addendum VII for "limit[ing] the number of participants in the commercial fishery," granting a "transferable property right," and creating an "oligarchy of exclusive participants" in the fishery. Mem. 23 (quoting App. II at 123, 124).[4]

These communications to ASMFC do not advance Plaintiffs' case for several reasons. Plaintiffs' complaint here is not that *the Commission* violated the law by adopting Addendum VII, but that Rhode Island violated the law by implementing the Addendum. This case

[3] Plaintiffs' inability - either before the DEM, or even in their legal briefs - to articulate concrete conservation equivalency proposal undermines their claim that Rhode Island readily *could have* proposed alternative means that would have served the conservation goals of Addendum VII. The Board had already determined, for example, that plans that relied upon a longer reference period were unacceptable because they would not achieve the reduction in effort that was necessary for conservation purposes.

[4] Plaintiffs also cite Paragraph 8 of the Pope Affidavit (App. II, p. 10), as prove that "conservation alternatives were suggested and submitted to the Board," but the cited paragraph merely discusses Pope's own legal objections to limiting trap allocations. See Mem. 4. It does not address alternative means of complying with Addendum VII.

challenges the Rhode Island DEM's implementation of Addendum VII; Plaintiffs pointedly have not challenged the ASMFC's decision to adopt that measure. And in any event, none of Plaintiffs' objections contain a concrete alternative management proposal that could be considered a substitute for Addendum VII's trap allocation provisions.

Nor did Plaintiffs (or anyone else) propose a concrete alternative management proposal to the DEM. The Gerald Carvalho affidavit highlighted by Plaintiffs does not contain any such proposal - the only management alternatives cited therein are broad alternatives ***to Addendum VII itself*** or other provisions of the ASMFC management plan, such as imposing "a single management area for Southern New England (SNE) stock in place of the now current geo-political management areas." App. II, p. 15 G. Carvalho Aff. ¶ 4. That is a far cry for conservation equivalency proposal, which would operate ***within the framework of*** Amendment 3 and Addendum VII, not change the entire multi-state management regime.[5]

*4. ASMFC's Approval of Some Proposals for Alternative Conservation Measures Does Not Support Plaintiffs Here.*

Plaintiffs also observe (Mem. 16-19) that the ASMFC has, on some occasions, approved conservation equivalency proposals submitted by other states. But these examples establish nothing. No one has disputed that the Commission has the ***authority*** to approve alternative management measures.

As noted, here no conservation equivalency measure was proposed (to DEM or the ASMFC), and Plaintiffs still have not identified an alternative even now.

Each of the conservation equivalency instances Plaintiffs cite involved a concrete set of proposed measures that the Commission was able to evaluate in light of the specific conservation

[5] The "critical questions" document Plaintiffs cite, see Pltf. Mem. at 23-24, and that was provided to the DEM Director, likewise does not identify any proposed conservation equivalency measures.

goals, the scientific data on the particular stock at a particular time, and the administrative requirements of specific plans. The approval of proposed alternatives in those other instances does not show that the ASMFC necessarily would have granted approval here. As Amendment 3's text makes clear, each proposal turns on the particulars of the proposal and the conservation situation prevailing in the fishery in question.

None of these examples involved Addendum VII or the particular considerations that prompted its adoption. Nor, contrary to Plaintiffs' claims (Mem. 18), does the Board's approval of alternative management measures in some instances undermine the concern for regulatory uniformity that is, as noted, an important aspect of regulating effort in Area 2, which has large areas subject to federal jurisdiction in addition to state waters. *See*, *e.g.*, Affidavit of Toni M. Kerns ¶ 22 (discussing basis for concern for regulatory uniformity in Area 2); ASMFC Supp. Mem. at 9 (same). *See also* Affidavit of Toni M. Kerns ¶ 21 (noting, with respect to conservation equivalency proposals of Connecticut and New York in Area 6, that Area 6 "falls completely within state waters and therefore no other agency besides New York and Connecticut must implement lobster regulations").

The Outer Cape management area at issue in the example Plaintiffs cite, see Mem. at 19, for example, is located wholly within Massachusetts, so that, unlike in Area 2, there was little risk of conflicting state rules here. And the fact that the ASMFC adopted a plan using different qualifying years, and a different metric of effort control in the Outer Cape, in 2003 under Addendum III than it did for Area 2 in Addendum VII, would hardly support Plaintiffs' cause even if the merits of the ASMFC's decision were actually at issue here. The Outer Cape proposal, moreover, represented a carefully crafted proposal that was submitted to ASMFC for

decision; here, in contrast, Plaintiffs have only vague allegations of litigants who still do not specify the alternative management regime they would prefer.

**CONCLUSION**

On the basis of the above and the previously submitted memoranda and supporting affidavits, Defendants respectfully request that that Plaintiffs' Motion For Declaratory Judgment, Motion For Preliminary Injunction, and Cross-Motion for Summary Judgment be denied and that Defendants' Motion for Summary Judgment be granted.

Respectfully submitted,

Department of Environmental Management
By its attorneys,

/s/ Gary Powers
Gary Powers RI Bar#2321
Deputy Chief Legal Counsel
Office of Legal Services
235 Promenade Street
Providence, RI 02908
(401) 222-4700 ext. 2308 (Telephone)
(401) 222-3378 (Fax)

Patrick Lynch
Attorney General

/s/ Terence J. Tierney
Terence Tierney RI Bar#2583
Special Assistant Attorney General
Department of Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext.2307(Telephone)
(401) 222-3016 (Fax)

Atlantic States Marine Fisheries Commission
By its attorney,

/s/ Sean H. Donahue
Sean H. Donahue, Esquire
2000 L St., NW
Suite 808
Washington, D.C. 20036
(202) 466-2234 (Telephone)
(202) 315-3582 (Fax)

Rhode Island Lobstermen Association
By its attorney,

/s/ Mark A. McSally
Mark McSally, Esquire RI Bar # 3006
Kelly, Kelleher, Reilly & Simpson
28 Carswell Street
Narragansett, RI. 02882
(401) 789-7800 (Telephone)
(401) 789-6990 (Fax)

**CERTIFICATION**

I, the undersigned, hereby certify that the within document was served by electronic means (ECF) on this 12th day of May, 2008 to the following:

Robert Caron, Esquire
RCaron@caronolenlaw.necoxmail.com

/s/ Terence J. Tierney